## 44689. HOLLOWAY v. THE STATE.
### (361 SE2d 794)

MARSHALL, Chief Justice.

Appellant, Jerome Holloway, was convicted in Bryan County of malice murder and armed robbery, and sentenced to death. The evidence shows that, on March 4, 1986, Holloway gained entry to the home of his mother's friend, Corabelle Berry, on the pretext of needing to borrow a cup of sugar, and proceeded to beat her to death with a stick and a kerosene lamp and to take from her residence several hundred dollars, which he used to buy stereo equipment.[1]

1. The trial court ordered that Holloway be evaluated by a forensic psychologist employed by the Georgia Regional Hospital in Savannah. Psychometric testing indicated that Holloway has an IQ of 49. The psychologist reported that Holloway is "an easily led, manipulated individual operating within a limited range of intelligence. His social skills are minimal and he has trouble dealing with anything less than concrete issues."

The trial court also ordered an evaluation by a psychiatrist from Central State Hospital in Milledgeville, who concluded that, although Holloway's comprehension of the proceedings was marginal, he was nonetheless competent to stand trial, and was criminally responsible at the time of the alleged criminal act.

Holloway's attorney sought funds to retain the services of an *independent* psychiatrist, pursuant to *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985), "to conduct an appropriate examination and assist in evaluation, preparation and presentation of the defense." Id. 105 SC at 1097. His motion for funds was denied.

The case came on for trial. After a jury was selected, Holloway attempted to plead guilty. A hearing was conducted to determine the voluntariness of the plea. See *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969); *State v. Germany*, 245 Ga. 326 (265 SE2d 13) (1980). At the conclusion of the hearing, the court ruled: "Obviously, he didn't understand what he was waiving . . . I think we

---

[1] The defendant was sentenced to death on January 22, 1987. A motion for new trial was filed on February 17, and amended April 17. On April 23, 1987, the motion for new trial was denied. The case was docketed in this court on May 19. At the defendant's request, oral arguments were postponed to October 13, 1987.

ought to proceed with the trial . . . I just can't accept [a guilty plea] when he obviously doesn't understand the distinction between what happens when he pleads guilty and what happens when he pleads not guilty, doesn't know his date of birth . . . I'm afraid that he does not understand the rights that he is giving up by pleading guilty."

Notwithstanding this finding, no hearing was conducted to determine whether Holloway was competent to stand trial, that is, "whether he [was] capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehend[ed] his own condition in reference to such proceedings, and [was] capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demand[ed]." *Brown v. State*, 215 Ga. 784, 787 (113 SE2d 618) (1960).

Just before the trial began, Holloway was evaluated by a psychologist whose services were paid for with personal funds of the defendant's attorney. Although the findings were not reported to the defendant in time to be of use at the guilt phase of the trial, the psychologist testified at the sentencing phase that approximately 1% of the general population is mentally retarded and that, intellectually, Holloway is in the bottom 10% of that 1%. He also expressed the opinion that, although Holloway ordinarily knows the difference between right and wrong, "during the course of that event . . . his thinking basically was not there."

2. "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U. S. 162, 171 (95 SC 896, 43 LE2d 103) (1975). In *Pate v. Robinson*, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966) the U. S. Supreme Court held "that even though defense counsel did not follow statutory procedures for requesting a special jury on competency, when evidence was presented indicating incompetency during the trial, there was a duty on the trial judge to inquire into the issue of competency and hold a hearing on the issue." *Baker v. State*, 250 Ga. 187, 190 (297 SE2d 9) (1982). We agree with the defendant that, in the circumstances of this case, a hearing should have been conducted on the issue of his competence to stand trial.

3. In addition, there is in this case a serious question of the extent to which Holloway was capable of differentiating between right and wrong at the time of the crime. See OCGA § 16-3-2. See also OCGA § 17-7-131 (a) (2). The defendant's mental condition was not merely a "significant" issue, it was virtually the *only* issue, at both phases of the trial.

Holloway was entitled to the kind of independent psychiatric assistance contemplated in *Ake v. Oklahoma*, supra, on the questions of

competency to stand trial, criminal responsibility, and mitigation of sentence. See *Lindsey v. State*, 254 Ga. 444, 447-49 (Addendum) (330 SE2d 563) (1985). Since he was denied this necessary assistance, his conviction must be reversed, and the case remanded for further proceedings.

4. In view of the under-developed state of the record regarding the significance and extent of Holloway's low intelligence, we will not now try to resolve the issue of whether, because of his low intelligence (he claims to be the only person presently under a death sentence in the entire country with an IQ below 50), Holloway's death sentence is excessive and disproportionate to sentences imposed in other cases, considering both the crime and the defendant. See OCGA § 17-10-35 (c) (3).

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 4, 1987 —
RECONSIDERATION DENIED NOVEMBER 24, 1987.

*Jack E. Carney, Jr., Clive A. Stafford-Smith,* for appellant.
*Dupont K. Cheney, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.

