## 45687. CURRY v. ZANT.
### (371 SE2d 647)

CLARKE, Presiding Justice.

Walter Curry was convicted of the death of Laura Will Sheram. He pled guilty and following the recommendation of the jury he was sentenced to death in 1984. The judgment was affirmed upon appeal to this court. *Curry v. State,* 255 Ga. 215 (336 SE2d 762) (1985). This application for habeas corpus was granted to consider whether Walter Curry's trial counsel was ineffective in his failure to obtain an independent psychiatric or psychological examination of Curry. Other issues which will be controlled by the answer to the question of the effectiveness of counsel are whether Curry was competent to stand trial, whether he was competent to enter a guilty plea, and whether he was able to have the requisite intent to commit the crime of malice murder.

In *Ake v. Oklahoma,* 470 U. S. 68, 74 (105 SC 1087, 84 LE2d 53) (1985), the Court found:

> We hold that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one.

Curry's competence and sanity were not only significant factors at his trial but the only issues. In *Ake,* the question was whether the court's failure to appoint an independent psychiatrist to assist an indigent defendant denied him due process. In *Holloway v. State,* 257 Ga. 620, 621-22 (361 SE2d 794)(1987), a case in which the only real issue at the guilt-innocence phase and the sentencing phase of the trial was the defendant's mental condition, we found:

> Holloway was entitled to the kind of independent psychiatric assistance contemplated in *Ake v. Oklahoma,* supra, on the questions of competency to stand trial, criminal responsibility, and mitigation of sentence. . . .Since he was denied this necessary assistance, his conviction must be reversed, and the case remanded for further proceedings.

Curry's case differs from both *Ake* and *Holloway* in that the trial court assured his appointed counsel that a psychiatrist would be

made available upon any reasonable request. Therefore, his contention that his constitutional rights were violated arises from a claim of ineffective assistance of counsel rather than from a denial of due process. The question of counsel's effectiveness stems from his failure to request aid which the court freely offered. In deciding this question, we first make clear that not every offer extended by the court must be accepted by defense counsel.

The test for ineffective assistance of counsel which will mandate reversal of a death sentence is two pronged. First the appellant must show that the performance of counsel was deficient. Next, appellant must show that this deficient performance prejudiced the defense to the extent that appellant was deprived of a fair trial. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). This standard has been applied to representation on guilty pleas as well as the sentencing phase of a capital case. *Hill v. Lockhart*, 474 U. S. 52 (106 SC 366, 88 LE2d 203) (1985).

Applying this test to counsel's performance in this case we find that counsel was ineffective. The trial court on its own motion had the appellant tested at Central State Hospital for competency to stand trial. Dr. Joseph Lower's report following his examination of Curry was not favorable to the defense. Although Dr. Lower found him organically brain damaged, "not hitting on all cylinders," and with a borderline personality disorder, he also found that Curry might be malingering and manipulating the staff at Central State. Although the trial court in response to a request from Curry's first appointed counsel for funds for an independent evaluation assured counsel that any reasonable request would be granted, Curry's trial counsel never followed up this request. At the habeas hearing opinion evidence by Howard E. Albrecht, Ph.D., a clinical psychologist, William A. Sutton, Ph.D., a consultant in forensic psychology, and Robert Lloyd Goldstein, M.D., was submitted by way of depositions. Dr. Albrecht, who personally examined and tested Curry, concluded that Curry was in the retarded range since his I.Q. tested at 69. He concluded that Curry had the intelligence of a twelve-year-old child with an I.Q. of 100 and that Curry was seriously mentally ill. Dr. Albrecht concluded that Curry did not have the ability to waive his constitutional rights. Concerning the importance of an independent test to the defense of Curry, Dr. Albrecht testified as follows on deposition:

I am of the firm opinion that an independent evaluation of Walter would have been invaluable to a jury trying his case. My reasons for this belief are as follows: the record contains gross factual inaccuracies and is replete with presumptive statements for which there is little or only circumstantial evidence to substantiate either the veracity or appropriateness

of the claims made; the results of the evaluation are based on an incomplete assessment of Walter because he was not administered a comprehensive battery of tests to adequately evaluate him; also related to Walter's psychological assessment, the qualifications of the examiner who administered the tests to him and interpreted and reported the test results, were limited to a bachelor's (B.A.) degree; the evaluation as a whole, as reflected in the documentation of that evaluation, was conducted by individuals who demonstrated an apparent lack of familiarity with contemporary psychiatric knowledge and understanding, crucial to an appreciation of Walter's condition.

(Petitioner's Exhibit 1, p. 29.)

Dr. Sutton's affidavit presented at the habeas hearing contained the following statement:

This affidavit is submitted in support of the motion to have Walter William Curry's conviction and death sentence set aside on the grounds that he was given an inadequate examination at Central State Hospital. In addition, there is compelling evidence Mr. Curry suffered from significant intellectual deficiency, major psychiatric illness and an organic brain syndrome.

Dr. Sutton, who had personally examined Curry in 1984, concluded that Curry was incapable of waiving his constitutional rights. He further concluded that Curry was either incapable of distinguishing right from wrong or incapable of controlling an impulse to commit a wrongful act. He was of the opinion that the diagnosis from Central State was both inaccurate and incomplete.

Also admitted as an exhibit in the habeas hearing was a letter to Curry's habeas counsel from Dr. Goldstein, who formed his opinion of Curry's mental status from psychiatric and psychological reports and from the trial transcript. Dr. Goldstein concluded that:

In view of his gross disturbances in reality testing and the psychotic-like scrambling of his thought processes, in combination with subnormal intelligence and associated organic brain dysfunction (including possible hearing impairment), in my opinion Mr. Curry lacked the capacity to enter into a plea of guilty and to knowingly and voluntarily waive thereby his right to a trial.

Kenneth Kondritzer, Curry's first appointed attorney, testified by affidavit that he had found it imperative to obtain funds for an inde-

pendent examination because from his own observations he felt that Curry was suffering from a severe mental illness. "It was difficult to communicate with him as he was in some sort of a trance." Secondly, he felt a second opinion was necessary because of his experience with Dr. Lower of Central State in connection with another case in which Dr. Lower had testified that additional testing was necessary to reach a proper diagnosis but that Central State was not equipped for such testing. Mr. Kondritzer stated,

> Affiant cannot comprehend why an insanity defense was not attempted in his case. . . . Unless Mr. Curry changed, it is inconceivable to Affiant that he knowingly and intelligently entered a plea of guilty.

Asked at the habeas hearing why he had not followed up the court's offer for funds to obtain an independent evaluation, trial counsel indicated that based on his own observations and on the report of Dr. Lower he felt it would be futile. Asked at the habeas hearing what would her response have been had she known funds were available and simply not used, assistant trial counsel answered, "It would have made no sense to me. It would have been inexcusable not to take advantage of that."

We find that although trial counsel met with Curry on many occasions, consulted with Curry and with Curry's family on the decision to enter a guilty plea, and conscientiously prepared for the sentencing phase of the trial, his failure to take a crucial step of obtaining an independent psychiatric evaluation of Curry deprived his client of the protection of counsel. Conscientious counsel is not necessarily effective counsel. The failure to obtain a second opinion, which might have been the basis for a successful defense of not guilty by reason of insanity and would certainly have provided crucial evidence in mitigation, so prejudiced the defense that the guilty plea and the sentence of death must be set aside.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

DECIDED SEPTEMBER 7, 1988 —
RECONSIDERATION DENIED SEPTEMBER 28, 1988.

*David A. Lane, Brent R. Hendricks, George H. Kendall,* for appellant.

*Michael J. Bowers, Attorney General, J. Michael Davis, Dennis R. Dunn, Assistant Attorneys General,* for appellee.

*Patricia M. Smith,* amicus curiae.