## A98A0498. COOPER v. THE STATE.
### (502 SE2d 306)

RUFFIN, Judge.

A jury found Eric Cooper guilty of rape. Cooper appeals, challenging the sufficiency of the evidence and the trial court's order finding he was not denied effective assistance of trial counsel. For reasons which follow, we affirm.

1. "On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and [Cooper] no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Hash v. State*, 226 Ga. App. 643 (487 SE2d 452) (1997).

Viewed under this standard, the evidence presented at trial shows that the victim and Cooper were casual acquaintances, having been recently introduced by a man named Lamont Duncan. During the early morning hours of September 10, 1995, Cooper, Duncan, the victim, her friend Tameka Smith, and a third man identified only as Felix, went to Cooper's house to watch a movie on television. When they arrived at Cooper's house, Felix stayed in the living room and the other four individuals went into Cooper's bedroom to watch television. Cooper, Duncan and Smith took off their shoes and laid on the bed while the victim sat in a chair. Duncan and Smith soon fell asleep, and shortly thereafter Cooper asked the victim to join them on the bed. The victim testified that although she first resisted, Cooper insisted, stating "you get on the bed, ain't nobody going to

bite you." The victim relented and got onto the bed.

The victim stated that after she joined Cooper on the bed, he started "feeling all on me on my private and all that and got all on top of me and kissing me and stuff." The victim told Cooper to stop and struggled to free herself, but Cooper continued his assault. During the struggle, Cooper pulled the victim's shorts aside, unzipped his pants and put his penis in her vagina. The victim screamed, and Smith awoke. Cooper got off the victim and turned the lights on. Duncan soon woke up, and the victim demanded that he take her home. When the victim got off the bed, she and Duncan both saw blood where she had been lying. The victim and Duncan both testified that after the incident Cooper started laughing.

Duncan, joined by Smith, Felix, and Cooper, took the victim home. When they arrived at the victim's house, the victim and Smith stepped out of the car, and when the victim looked back, she saw blood where she was seated. After Smith and the victim left the car, Duncan asked the other passengers about the blood on the seat. According to Duncan, Cooper, again laughing, responded that the victim was "fucked up."

When the victim and Smith entered the house, the victim's mother noticed blood on her clothing. The mother testified that "[s]he was bloody from her waist down, and she had like a hysterical look on her face." According to the mother, the victim walked straight to the bathroom, and a short time later told her she had been raped.

After reporting the incident to the police, the victim went to the hospital. The physician who treated the victim at the hospital had recently performed surgery on the victim for complications resulting from Crohn's disease. Due to the surgery, the victim had sutures inside her vagina. When the victim told the physician she had been raped, he examined her vagina. The physician testified that the sutures were "completely torn apart" and that the injury was consistent with forcible sexual intercourse. In fact, the physician stated that he could not think of anything other than forcible penetration that could have caused the sutures to tear.

Following the State's presentation of evidence, Cooper testified in his own defense. During his testimony, Cooper denied raping the victim, stated that he did not even know the victim and claimed he was at home with either his wife or his girlfriend and his daughter during the time the offense took place.[1]

Despite Cooper's unequivocal denial that he committed the rape, the jury was authorized to find him guilty. It is well settled " 'that it

---

[1] It is unclear from Cooper's testimony whether he was with his wife or girlfriend. In response to one question, Cooper stated that he was home with his girlfriend. However, in response to another question, Cooper acknowledged that he stayed home with his wife.

is the prerogative of the jury to accept the defendant's statement as a whole, or to reject it as a whole, to believe it in part, or disbelieve it in part. In the exercise of this discretion they are unlimited.' [Cit.]" *Eason v. State*, 215 Ga. App. 614, 617 (8) (451 SE2d 820) (1994). The jury in this case obviously chose to disbelieve Cooper's testimony and convict him based on the victim's corroborated recollection of the offense.

2. Cooper also asserts that the trial court erred in denying his motion for new trial because the record showed he was denied effective assistance of trial counsel. We disagree.

" 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland v. Washington*, 466 U. S. 668, 686 (104 SC 2052, 80 LE2d 674) (1984). First, [Cooper] must prove that trial counsel's performance was deficient. Second, he must show that but for trial counsel's deficiencies, there is a reasonable probability that the results of the trial would have been different." *Jones v. State*, 263 Ga. 835, 837 (2) (439 SE2d 645) (1994). "A trial court's determination that a defendant was not denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous. [Cit.]" *Jones v. State*, 230 Ga. App. 65, 66 (495 SE2d 327) (1997).

(a) Cooper asserts that counsel was ineffective because he failed to interview key witnesses during his trial preparation. Specifically, the transcript shows that two witnesses, Tameka Smith and the man named Felix did not testify and that trial counsel did not interview them prior to trial. However, trial counsel testified that he attempted to locate both witnesses but was unsuccessful. Although Cooper suspects that counsel did not attempt to locate the witnesses, counsel's credibility was a matter for the trial court's discretion. See *Randolph v. State*, 225 Ga. App. 324 (484 SE2d 1) (1997). In light of counsel's testimony, the trial court's finding on this ground is not clearly erroneous. See id.; *Jones*, supra.

(b) Similarly without merit is Cooper's claim that counsel was ineffective because he failed to meet with Cooper for any significant period of time during trial preparation. Although Cooper testified that trial counsel only met with him twice before trial and never discussed the merits of his case, counsel stated that he visited Cooper on five occasions at the jail to discuss the case and that they had ten or fifteen three-way calls with Cooper's mother to discuss the matter. Accordingly, the trial court's finding on this ground is not clearly erroneous. See id.

(c) Cooper asserts that counsel was ineffective for failing to conduct a pretrial conference with the district attorney and the trial

judge. Cooper argues that such a conference might have yielded a plea bargain but that option was never presented to him. Again, counsel's testimony belies Cooper's assertion. Although counsel did not engage in a formal pretrial hearing, he testified that he had numerous conversations with the three prosecutors representing the State concerning possible plea bargains. During these negotiations, the State offered various plea agreements, all of which would have required Cooper to serve a minimum of five years. However, when counsel discussed these offers with Cooper, Cooper insisted that he would not assent to any agreement which required him to serve time. Accordingly, the trial court's finding on this ground is not clearly erroneous. See id.

(d) Cooper asserts that trial counsel was ineffective because he "failed to follow up or investigate [Cooper's] psychological status." Cooper argues that his psychological status prevented him from communicating effectively with counsel and that this problem could have been avoided if counsel had a better understanding of his psychological condition. Although the record supports Cooper's assertion that he sometimes had difficulty understanding his attorney, Cooper has not shown that counsel's performance was deficient due to his failure to obtain an evaluation or that he was harmed by counsel's performance.

The record shows during a 1994 criminal prosecution, Cooper was evaluated and diagnosed with "borderline intellectual functioning and depression," but was found competent to stand trial. At the new trial hearing in this case, counsel stated that he was fully aware of the 1994 evaluation. Counsel further stated that he discussed Cooper's condition with his mother, who confirmed that "he had trouble in school and he just didn't catch on quite [sic]." Based on the previous evaluation, his mother's assessment and counsel's own observations, counsel felt that he understood Cooper's condition and that he often had Cooper repeat what was told to him to ensure that Cooper had grasped what was said.

It does not appear from the record, and Cooper has not shown, that another psychological evaluation would have provided counsel with any new insight into Cooper's condition. Rather, the evidence before the trial court showed that counsel investigated and comprehended the nature and extent of Cooper's difficulty and took action to compensate for the problem. Accordingly, the trial court's finding that counsel was not deficient for failing to order another evaluation was not clearly erroneous. Cf. *Curry v. Zant*, 258 Ga. 527 (371 SE2d 647) (1988) (counsel ineffective for failing to obtain independent psychological evaluation where abundant evidence showed defendant was seriously mentally ill and his competence and sanity were the only issues at trial).

(e) Finally, we find no merit in Cooper's claim that he was denied effective assistance because counsel did not prepare him to testify and failed to inform him that he was not required to testify. Specifically, Cooper stated at the new trial hearing that although he did not want to testify at trial, when the time came, counsel merely told him to get up on the witness stand.

The evidence of record refutes Cooper's assertions. As stated in Division 2 (b), the record shows that counsel spent considerable time discussing Cooper's defense with him. Furthermore, at the new trial hearing, counsel stated that he prepared Cooper for trial by advising him on what kind of clothes to wear, his demeanor at trial, the manner in which he should answer questions and what questions the prosecutor would likely ask. Finally, counsel stated that he and Cooper discussed the issue of whether Cooper should testify on several occasions prior to trial and that he told Cooper he "didn't think it was in his best interest to testify."

The trial transcript also belies Cooper's assertion that he was unaware of his right not to testify. The transcript shows that prior to Cooper testifying, the trial judge fully informed him of his right not to testify. After informing Cooper of this right, the trial judge asked him if he understood the right and if he had discussed the matter with his attorney. Cooper answered "yes" to both questions. The trial judge then asked Cooper if he needed to further discuss the matter with his attorney, and Cooper responded "no." Following this inquiry, Cooper unequivocally stated that he wanted to testify.

Although Cooper argues that his learning disabilities prevented him from fully understanding his right not to testify, the foregoing evidence contradicts this assertion. Furthermore, other evidence showed that Cooper had six prior convictions, all based on guilty pleas. Cooper acknowledged that prior to each plea, the trial judge informed him he had a right to a trial during which he could choose to testify or remain silent.

Under these circumstances, there was ample evidence showing counsel informed Cooper of his right not to testify, that Cooper understood the right and that counsel adequately prepared Cooper to testify. The trial court's finding on this ground was not clearly erroneous. See *Mobley v. State*, 264 Ga. 854, 856-857 (2) (452 SE2d 500) (1995); *Rowland v. State*, 228 Ga. App. 66 (3) (c) (491 SE2d 119) (1997).

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED MAY 5, 1998.

*Carla J. Friend*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Elisabeth G. Macnamara, Assistant District Attorneys*, for appellee.