A01A2071. NICHOLS v. THE STATE.
(559 SE2d 538)

SMITH, Presiding Judge.

Justin Levi Nichols appeals from the denial of his motion to withdraw his guilty plea to the offenses of rape, aggravated assault, and burglary.[1] He contends that he was denied effective assistance of counsel, that his plea was not voluntary, and that withdrawal of the plea is necessary to prevent a manifest injustice. We find no error, and we affirm.

1. We first discuss Nichols's argument that his plea was not voluntarily given. During the plea hearing, Nichols testified that he "broke in a woman's house, beat her up and raped her." And he admitted that he "had sexual intercourse with her forcibly and against her will." Before giving this testimony, Nichols acknowledged the following: He had talked with his attorney concerning the facts of his case; he did not need more time to discuss the case with counsel before proceeding with the hearing; he could read and write and understood the nature of the charges; he understood the maximum sentence to be life imprisonment and the minimum to be ten years; he was not under the influence of any drug that clouded his mind; he understood the proceedings occurring on that day; he had not been coerced or threatened to enter the plea; he had not been offered more

---

[1] In addition to his guilty plea on these charges, Nichols also admitted to violating first offender probation in two other cases, in which he had entered guilty pleas to the offenses of burglary, financial transaction card theft, and financial transaction card fraud.

favorable treatment in exchange for the plea; and he had gone over his plea form with counsel, and the answers written on the form were true and correct.

The trial court informed Nichols that he was entitled to a presumption of innocence and that the State was required to prove his guilt beyond a reasonable doubt. He was further advised by the court concerning his rights to have a trial by jury and a speedy trial, to confront witnesses, to have competent representation, to have witnesses subpoenaed, to present evidence, and to testify. Nichols testified that he understood that he would give up these rights by pleading guilty, and his attorney, who had been appointed by the trial court, informed the court that he believed Nichols understood his rights and that he had reviewed the charges with Nichols. In addition, Nichols acknowledged to the court that by pleading guilty, he knew that he gave up all defenses, known and unknown, including any defense of which he or his counsel was not aware, and that he needed no further explanations concerning the proceeding. The State then made its recommendation concerning sentencing, and Nichols stated he understood this recommendation. Following a few other questions by the trial court, Nichols pled guilty to the charges against him, admitting that the plea was freely and voluntarily given. The trial court accepted the plea, finding that a factual basis for it existed and that Nichols had knowingly and intelligently waived his rights. Plea counsel asked that sentence be imposed as recommended by the State, and the trial court did so.

With the assistance of another court-appointed attorney, Nichols filed a motion to withdraw his guilty plea on the grounds that the plea was not knowingly and voluntarily entered and that he received ineffective assistance of counsel. Yet another appointed attorney represented Nichols during the hearing on the motion.[2] During that hearing, Nichols stated that plea counsel "told me if I did not plead out to these charges that I would get the max no matter what, which was I think life and forty." Nichols agreed on direct examination during the hearing that plea counsel gave him "the words to say to the court," and he felt he was under "duress or compulsion" to enter the plea. He stated that he told plea counsel earlier that day that he "did not want to plead out and he brought me up to court anyway." He testified that plea counsel handed him a form, which he did not review with Nichols, and told Nichols to "sign this you're pleading out." Nichols stated that he wanted to go to trial "and try to beat" the charges and that he wanted to fire his attorney but was told he could not do so. He acknowledged on cross-examination, however, that dur-

---

[2] Nichols has new appellate counsel on appeal.

ing the plea hearing, he never expressed to the trial court any dissatisfaction with his attorney, nor did he inform the court he wanted to fire him or raise any other concerns or problems he had with his attorney.

After a defendant raises the issue of the validity of his or her guilty plea, the State must show that the plea was made voluntarily and intelligently. *King v. State*, 270 Ga. 367, 369 (1) (509 SE2d 32) (1998). This may be accomplished by showing on the record of the guilty plea hearing that the defendant was aware of the rights he or she was waiving and the consequences of his or her plea, or the State may fill "a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary." (Punctuation and footnote omitted.) Id. The record in this case reflects "a careful inquiry by the court showing that [Nichols] fully understood the nature of the charges, the consequences of his plea, and the rights he was relinquishing." *Miller v. State*, 241 Ga. App. 397, 398 (1) (527 SE2d 571) (1999). In addition, he testified that he acted freely and voluntarily, without having been coerced or threatened, and he admitted to the facts underlying the charges against him. Although he later testified that he felt coerced by plea counsel, this simply presented a matter of witness credibility, which was for the trial court to decide. Id. Because the evidence supported the trial court's ruling that the plea was given freely and voluntarily, the trial court did not manifestly abuse its discretion in denying his motion for new trial.

2. Nichols also argues he was denied effective assistance of counsel because plea counsel failed to investigate adequately his mental condition at the time of the alleged incident and failed to request an independent psychological evaluation. During the hearing on his motion to withdraw the plea, Nichols testified concerning his "mental situation" and indicated that this situation *could* have had a part in the fact that he entered the plea. Nichols told the trial court that he had a blood clot and a skull fracture when he was younger and that when he was 13 or 14, he had "seen a shrink" and had "been diagnosed with hyperactive impulse disorder." He agreed on direct examination that he had told the psychologist who performed a court-ordered psychological evaluation after the crimes in this case were allegedly committed that he was "amnesic for the events that led to the charges" against him. He also agreed that he had instructed plea counsel that he "had some issues" concerning his brain surgery and blood clot and asked him to explore the possibility of a medical defense and his mental capacity at the time of the incident. According to Nichols, plea counsel told him that he could obtain a psychological evaluation only concerning his competency to stand trial and assist in his defense. When asked on cross-examination during the

motion to withdraw plea hearing if he believed the State had a "pretty strong" case against him, he answered, "Might have a good one, but it depends if my lawyer fought the way I wanted him to."

Also, a letter written by Nichols to the trial court three days after the plea hearing was introduced into evidence. In it, he stated that he did not want to enter the plea because "still to the day I do not remember doing none of this. . . . I have had a serious brain surgery when I was younger and it is documented that I have been diagnosed with a hyperactive impulse disorder." He stated that his doctor had told him at the time of the injury "that I could have seizures and all kinds of stuff could happen." Nichols wrote that he thought he could have had "a focal seizure" and that he "mentioned" to plea counsel that he "wanted to get a CAT scan." According to Nichols's letter, however, plea counsel "kept telling me it would not help me none." Nichols provided the trial court with the names and phone numbers of his mother and grandmother, stating that they could "verify everything" he had advised the court in the letter. Plea counsel did not testify at the hearing on the motion to withdraw the plea.

On a motion for new trial, to establish a claim that trial counsel was deficient, a defendant must show that counsel's performance was deficient and that this deficient performance prejudiced his or her defense. *Rivers v. State*, 271 Ga. 115, 117 (2) (516 SE2d 525) (1999). A strong presumption exists that counsel's conduct fell within the wide range of reasonable professional assistance. And "[w]here trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome this presumption." (Citation omitted.) Id. Furthermore, we have held that "[i]n the absence of testimony to the contrary, counsel's actions are presumed strategic." *Clark v. State*, 239 Ga. App. 245, 248 (5) (520 SE2d 245) (1999). See also *Baker v. State*, 251 Ga. App. 377, 379 (2) (554 SE2d 324) (2001). And more specifically, in the context of determining whether trial counsel rendered ineffective assistance in the context of a guilty plea, a defendant must "establish the *reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. [Cits.]" (Emphasis supplied.) *Brantley v. State*, 268 Ga. 151, 152 (1) (486 SE2d 169) (1997). We conclude that Nichols has failed to meet his burden.

First, although this case did not involve a hearing on motion for new trial, Nichols nevertheless was required to show during the hearing on the motion to withdraw the plea that counsel's performance was deficient and that he would have insisted on going to trial but for this deficiency. *Brantley*, supra. But Nichols failed to present the testimony of trial counsel. And without this testimony, we must presume that any decisions concerning independent testing and pursuit of a medical defense were strategic and therefore did not consti-

tute deficient performance. See *Rivers*, supra; *Baker*, supra.

In addition, Nichols has failed to show a reasonable probability that, but for any alleged deficiencies of plea counsel, he would have insisted on going to trial. We first note Nichols's reliance on his testimony that plea counsel told him that he could be evaluated only for the purpose of determining whether he was competent to stand trial. But the record shows that his attorney *did* request a more extensive evaluation. It contains an "order for mental evaluation" prepared by plea counsel and consented to by the State requiring the Department of Human Resources or the Forensic Psychiatry Service to "conduct an evaluative examination of the defendant, provide treatment of the defendant, if appropriate, and provide to this Court a report of diagnosis, prognosis and its findings, with respect to" three issues. In addition to providing a report addressing Nichols's competency to stand trial and recommendations for disposition, the order also required the report to address Nichols's "degree of criminal responsibility or mental competence at the time of the act." In particular, the report was to describe "[w]hether or not the accused had the mental capacity to distinguish right from wrong in relation to the alleged act; whether or not the presence of a delusional compulsion overmastered his will to resist committing the alleged act."

Nichols was examined, the report was prepared as directed by the court, and a copy of the report was provided to the State and to Nichols's trial attorney. It was unsealed during the hearing on his motion to withdraw the plea and was introduced by Nichols. He stated that he had not seen the report prior to the hearing. The forensic psychologist who evaluated Nichols stated in the report that Nichols, whose intelligence fell within the average range, was "a very alert, 19-year-old male." Nichols admitted that he had been consuming drugs and alcohol for five or six years and that he had experienced "past visual and auditory hallucinations" after consuming LSD. But the psychologist found no indication that Nichols "was or has ever suffered from any other type of psychotic symptoms." Nichols was "able to organize his thoughts quite well and his conversation was rational, logical, coherent and goal-directed." The psychologist noted that Nichols had no "defect in his immediate, short-term memory or long-term memory with the exception of the events that led to his present legal situation." In addition to concluding that Nichols was competent to stand trial, the psychologist made the following findings:

> My evaluation of Mr. Nichols did not reveal any evidence that would suggest that he would meet the criteria to be considered not legally responsible for his actions as they relate to the charges presented against him. That is, there was no

indication that he was suffering from a delusional compulsion that would have overmastered his will to have resisted committing the alleged offenses. In addition, he clearly has the mental capacity to distinguish between right and wrong and freely verbalizes the wrongfulness of what he is charged with.

Relying on cases such as *Curry v. Zant*, 258 Ga. 527 (371 SE2d 647) (1988), and *Mullins v. Hopper*, 242 Ga. 123 (249 SE2d 606) (1978), Nichols seems to argue that plea counsel should have investigated further his mental condition and that if he had done so, he would have discovered a meritorious defense. But *Curry* and *Mullins* are distinguished from this case. In *Curry*, the defendant pled guilty to murder and was sentenced to death upon the jury's recommendation, and his trial counsel failed to obtain an independent psychological examination. Expert evidence was presented at the habeas corpus hearing showing, among other things, that defendant was retarded and "seriously mentally ill" and that compelling evidence showed that he "suffered from significant intellectual deficiency, major psychiatric illness and an organic brain syndrome." Id. at 528-529. In addition, one expert testified by deposition "that an independent evaluation of [the defendant] would have been invaluable to a jury trying his case." Id. at 528. The Supreme Court concluded that trial counsel's failure to obtain an independent psychiatric evaluation of the defendant constituted ineffective assistance. The Court reached the same conclusion in *Mullins*, supra, in which both of defendant's trial attorneys, who advised him to plead guilty to several offenses, were aware of the defendant's "long history of schizophrenia and his diagnosis as being in psychosis when arrested." Id. at 123.

We also note Nichols's reliance on *Holloway v. State*, 257 Ga. 620 (361 SE2d 794) (1987), a death penalty case which the Supreme Court of Georgia reversed because the trial court erroneously denied defendant funds to hire an independent psychiatrist. In that case, defendant went to trial after attempting to plead guilty. The trial court concluded that it could not accept a plea because defendant did not understand the rights he was waiving by pleading guilty. Id. at 621. Despite this finding, no hearing was held to determine whether defendant was competent to stand trial. Id. During the sentencing phase, a psychologist, whose services were paid for by trial counsel and who evaluated defendant just before trial began, testified concerning defendant's severe retardation. Id. Based on these facts, the Supreme Court concluded that a hearing should have been held to determine defendant's competence to stand trial and that he was entitled to independent psychiatric assistance on issues of his competency to stand trial, his criminal responsibility, and mitigation of

sentence. Id. at 621-622 (3). See also *Collier v. Turpin*, 177 F3d 1184, 1196 (II) (B) (11th Cir. 1999) (among other significant deficiencies, trial counsel ineffective for failure "to explore and present readily available expert opinion evidence" concerning defendant's "diabetes and diffuse organic brain damage").

In contrast, Nichols has made no showing of evidence refuting the findings of the court-ordered report, other than his own self-serving statements during the hearing on his motion to withdraw the plea, and he has failed to demonstrate "how a further investigation would have benefitted his case." *Hammond v. State*, 264 Ga. 879, 883 (4) (b) (452 SE2d 745) (1995).[3] At best, those statements show only that his case *might* have been stronger than that of the State or that his medical condition *could* have influenced his decision to enter the plea. Nichols's claim that further investigation would have been helpful is speculative. Under these facts, we conclude that he has failed to show a reasonable probability that but for plea counsel's failure to request an independent psychological examination or investigate further his mental health at the time of the act, he would have insisted on going to trial.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED JANUARY 29, 2002.

*McCracken Poston, Jennifer E. Hildebrand*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Leonard C. Gregor, Jr., Assistant District Attorney*, for appellee.

---

[3] *Hammond* addresses the effectiveness of counsel during a jury trial, rather than at the guilty plea stage. We find the reasoning in that case helpful here, however.