## A04A0148. REYNOLDS v. THE STATE.

(598 SE2d 868)

PHIPPS, Judge.

In 1990, Leroy Reynolds was convicted of burglarizing a pawn shop and sentenced to serve 20 years, 12 in confinement. Reynolds elected to proceed pro se with a motion for new trial, which was timely filed. For reasons attributable in part to Reynolds and in part to the trial court, that motion was not heard until 2003. After a hearing, the trial court denied Reynolds's motion for new trial. On appeal, Reynolds claims that (1) his trial counsel was ineffective, (2) the trial court erred by failing to adequately ascertain that he was knowingly and intelligently surrendering his constitutional right to call witnesses, and (3) the evidence was insufficient to support his conviction. For reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence presented at trial showed that a pawn shop in Calhoun was burglarized on February 24, 1990, when the shop was closed, and that several handguns were taken. Calhoun Police Officer Jessie Mann responded to a call regarding the burglary at about 5:00 a.m. While en route, he noticed a black Ford Bronco with an out-of-state license tag coming from the general direction of the pawn shop. Mann pulled behind the Bronco, which had three male occupants, and followed it while he attempted to obtain the license plate number. When Mann activated his lights and siren in an attempt to stop the Bronco, the driver accelerated rapidly. Mann gave chase for more than three miles before the driver of the Bronco lost control of his vehicle, which flipped over and slid down an embankment. Reynolds, Jamie Nordyke, and Jimmy Reed, who had been driving, crawled out of the Bronco and were subsequently arrested. Officer Charles Wheat, who also was involved in the chase, testified that several handguns were found in a pillowcase in the Bronco. The pawn shop owner testified that those guns were the guns taken from his store.

Reed testified that he, Nordyke (his cousin), and Reynolds left Oklahoma on February 22 in the Bronco on their way to Georgia. As they left Arkansas, Reed learned that Nordyke and Reynolds planned to burglarize a pawn shop in Georgia and that they wanted him to drive the car. Reed testified that when they got to the pawn shop, Nordyke and Reynolds got out of the Bronco with bolt cutters and a pillowcase. Nordyke used the bolt cutters to break the locks on the door and then passed them to Reynolds, who used them to break the door window. After Nordyke and Reynolds went inside the pawn shop, Reed testified "I heard glass break and then an alarm went off and [both men] c[a]me running out with a pillowcase full of guns and yelling 'Go, go, go.' "

1. Reynolds claims that his trial counsel was ineffective because he failed to call certain witnesses.

At the motion for new trial hearing, Reynolds testified that he told his counsel prior to trial that there were three witnesses he wanted to call, Nordyke, Mark Ray, and Michael Stone. Ray and Stone were cell mates with Reed. According to Reynolds, Nordyke would have testified that he and Reed had planned the burglary, that Reynolds had no knowledge of it, and that Reynolds was asleep when it happened. Ray and Stone would have testified that Reed had told them that Reynolds was asleep in the Bronco during the burglary and did not know that it was happening.

At trial, Reynolds told the court that he "had a couple of witnesses that [he] wanted called and they're not here." The court asked him whom he wanted to call and the following transpired:

REYNOLDS: Jimmy Reed was in the county jail, when he went in he was bragging to everybody about what he did and how he did it, and there were several inmates in there who heard him, and I wanted to call Jamie Nordyke, his cousin.
THE COURT: You want to call him?
REYNOLDS: I'd like to.
THE COURT: All right, if he wants to call him. You want to — are you advising him against that, [trial counsel]?
[TRIAL COUNSEL]: One moment, Your Honor.

The record shows that the trial court then explained to Reynolds that he had the right to testify. After the explanation, Reynolds decided that he would testify. The only further mention of the witnesses was by the trial judge when he said "[a]ll right, and then — who is — get the names of the witnesses and bring them over here, that he wants." After Reynolds testified, his trial counsel rested.

At the motion for new trial hearing, which took place 13 years after the trial, Reynolds's trial counsel testified that he did remember discussing whether to call Nordyke as a witness at trial but that he did not remember any discussion about calling Ray or Stone. Trial counsel testified that he would have called Nordyke if he had thought it would have helped the case. He also testified that calling additional witnesses would have hurt Reynolds's case because he would have lost the right to closing argument.

A defendant claiming ineffective assistance of counsel must show (1) that his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding

would have been different. In addition, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous.[1]

When determining the prejudicial effect of counsel's failure to call a witness, a defendant must make an affirmative showing that specifically demonstrates how counsel's failure affected the outcome of his case.[2] Trial counsel's failure to call a witness cannot be deemed "prejudicial" without a showing that the witness's testimony would have been relevant and favorable to the defendant.[3] Because Reynolds failed to call Nordyke, Ray, or Stone at the motion for new trial hearing to substantiate his claim that their testimony would have been material to his defense, "it is impossible for [Reynolds] to show there is a reasonable probability the results of the proceedings would have been different."[4] Under these circumstances, ineffective assistance has not been shown.[5]

We note that the 13-year delay between Reynolds's conviction and the hearing on the motion for new trial may have been the reason for Reynolds's inability to call Ray or Stone at the hearing. Although Reynolds was in part to blame for this delay,

> [t]he courts have a duty to the citizens of this state to oversee the criminal justice system and to ensure that those who are accused of crimes are tried expeditiously, and that their constitutional rights are protected. . . . The legislature has provided that a defendant must file a motion for new trial within 30 days of the entry of the judgment on the verdict. This and other statutorily established time limits clearly indicate the intention of the legislature that criminal matters be resolved promptly. [Thirteen] years is too long [a delay] to [conduct a hearing on] a motion that must be filed in thirty

---

[1] (Citations and punctuation omitted.) *Parrish v. State*, 237 Ga. App. 274, 283 (10) (514 SE2d 458) (1999).

[2] *Letson v. State*, 236 Ga. App. 340, 341 (2) (512 SE2d 55) (1999).

[3] Id.

[4] Id. at 342.

[5] See id.

days. The judicial branch, prosecutors, and the criminal defense bar all have a duty to meet their respective responsibilities in ensuring that criminal cases are promptly resolved.[6]

Nonetheless, decisions regarding which witnesses to call and all other tactical and strategic decisions are the exclusive province of the lawyer after consultation with the client.[7] And decisions regarding matters of trial strategy, whether wise or unwise, do not constitute ineffective assistance of counsel.[8]

2. Reynolds claims that the trial court erred by failing adequately to ascertain whether he was knowingly and intelligently waiving his right to call witnesses. He points out that a trial court must inquire whether a defendant's waiver of his right to counsel or a defendant's decision to enter a guilty plea is made knowingly and intelligently[9] and argues that the same standard should apply to a defendant's right to call witnesses.

The trial court does have a duty to determine whether a defendant has knowingly and intelligently waived his right to counsel.[10] And when a defendant challenges the validity of his guilty plea, the state must prove that the plea was made voluntarily and intelligently by showing that the defendant is aware of the rights he is waiving, including the right to have witnesses subpoenaed and the right to present evidence, and the consequences of his plea.[11] But decisions regarding which witnesses to call are the exclusive province of the attorney after consultation with the client.[12] The trial court is not required to supervise this process.

3. Reynolds claims that the evidence was insufficient to support the verdict. He argues that, other than Reed's testimony, his only connection to the crime was his mere presence.

To sustain a felony conviction based upon the testimony of an accomplice, there must be independent corroborating evidence, either testimony from another witness or corroborating circumstances, which connects the accused to the crime.[13] "The sufficiency of the corroborating evidence is a matter for the jury, and if the verdict is based upon the slightest evidence of corroboration connecting an

---

[6] *Stone v. State*, 257 Ga. App. 306, 307 (570 SE2d 715) (2002).

[7] *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999).

[8] *Whitehead v. State*, 258 Ga. App. 271, 278 (6) (b) (574 SE2d 351) (2002).

[9] See *Middleton v. State*, 254 Ga. App. 648 (1) (563 SE2d 543) (2002) (right to counsel); *Nichols v. State*, 253 Ga. App. 512 (1) (559 SE2d 538) (2002) (voluntariness of guilty plea).

[10] See *Middleton,* supra.

[11] See *Nichols,* supra at 513-514 (1).

[12] *Parrish,* supra at 284.

[13] See OCGA § 24-4-8; *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996).

accused to a crime, even if it is circumstantial, it is legally sufficient. [Cit.]"[14] The corroboration "need not be sufficient to warrant a guilty verdict or prove every material element of the crime; it need only tend to connect and identify the defendant with the crime charged."[15]

Reed's testimony was corroborated by Mann's testimony that Reynolds was in the Bronco with Reed and Nordyke shortly after the burglary and by Wheat's testimony that handguns were found in a pillowcase retrieved from the Bronco. Reed's testimony was further corroborated by the testimony of the pawn shop owner that the guns found in the Bronco were the guns stolen from his shop. This is sufficient corroboration of Reed's testimony that Reynolds was an active participant in the burglary. The evidence presented, when construed most favorably to the jury's verdict, was sufficient to enable a rational trier of fact to find Reynolds guilty beyond a reasonable doubt of the crime for which he was convicted.[16]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED APRIL 21, 2004.

*Christopher G. Paul*, for appellant.
*T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney*, for appellee.

---

[14] *Edmond*, supra.

[15] (Citations and punctuation omitted.) *Raines v. State*, 186 Ga. App. 239, 240-241 (2) (366 SE2d 841) (1988).

[16] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).