## A02A1153. FIELDS v. THE STATE.
### (572 SE2d 697)

BARNES, Judge.

Following the denial of his motion for new trial, Kovon Fields appeals his jury conviction for armed robbery. He contends that the trial court erred in giving two requests to charge that were submitted during trial and in denying his motion for a directed verdict. Finding no error, we affirm his conviction.

1. Fields asserts that the trial court erred in denying his motion for directed verdict. The denial of a directed verdict is reviewed under the sufficiency standard. See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict. *Taylor v. State*, 235 Ga. App. 323, 324 (1) (509 SE2d 388) (1998). As the reviewing court, we do not weigh the evidence or decide witness credibility, but only determine the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As long as there is some competent evidence, even though contradicted, to support each fact essential to the State's case, the jury's verdict will be upheld. *Kenyada v. State*, 239 Ga. App. 438, 439 (521 SE2d 408) (1999). Accordingly, a motion for directed verdict is authorized only when there is no evidence to support a conviction. *Yawn v. State*, 237 Ga. App. 206, 207 (515 SE2d 182) (1999).

The evidence, so viewed, shows that between 7:00 and 7:30 a.m. on February 2, 1995, Fuddruckers' restaurant manager, Andy Glenn, was in his office when he heard his name called. As he left his office to respond, a man wearing a wolfman-type mask held a gun to Glenn's head, led him back to the office, and told him to open the safe. Glenn complied, and the man emptied the safe of approximately $2,500 in "bills, quarters, dimes, nickels," and $500 in gift certificates and then led Glenn out of the office to the main room of the restaurant where two accomplices were detaining the other employees. After one of the robbers took Glenn's Volkswagen car keys, all of the employees were put in the trash compactor room and told not to move.

After the robbers left, Glenn and the other employees waited

approximately ten minutes and then left the trash room to call police. When the police arrived, Glenn told them that he recognized the voice of the man wearing the wolfman mask as that of a former employee, Kovon Fields. Relying on the address in Fields' employee file, the police went to Fields' home. Fields and two other men were there. After discovering a rubber mask lying in plain view, the police brought Glenn and another employee to Fields' residence to identify him or the mask. Neither could positively identify Fields as the robber or the mask as the one used in the robbery. The police left, but returned approximately four hours later with a search warrant.[1]

Upon executing the search warrant, the police recovered, among other things, $400 in the master bathroom behind the commode, $72 in nickels and $10 in quarters rolled up in a sweater on the floor of the master bedroom closet, a black and white cloth bag on top of the water heater containing $270 in quarters and $115 in dimes, a wolfman mask, a white bag containing Fuddruckers' gift certificates, $15 in bills, $10 in quarters, and a set of Volkswagen car keys in the pocket of a jacket hanging in another bedroom closet. The police also recovered $389 from Fields' person. Fields and two accomplices were then arrested for armed robbery.

Fields argues that the trial court should have granted a directed verdict because "there was great contradiction in the testimony at the trial." Specifically, two of the witnesses could not identify him as the perpetrator, and while Glenn testified that it was Fields who accosted him in his office with a gun, one of the other robbers, Johnson, testified that Fields was not the one who approached Glenn in the office.

The evidence adduced at trial demonstrates that, while Fields was not physically identified by sight, Glenn testified that there was no doubt in his mind that the voice of the man in the wolfman mask who pointed the gun at him belonged to Fields. He testified that although Fields only worked at Fuddruckers for three to four months, he talked with him on a daily basis and was familiar with his voice. Johnson corroborated Glenn's testimony when he said that Fields had the gun and the wolfman mask on when the three men entered the restaurant.

While there appeared to be some conflicts in the testimony, such as which of the robbers was with Glenn in his office, and which of the robbers made certain comments, any conflicts in the testimony were a matter of credibility for the jury to resolve. *McKay v. State*, 251 Ga. App. 115, 116 (553 SE2d 672) (2001). "Slight evidence of a defendant's identity and participation from an extraneous source is all that

---

[1] One of the men was arrested at that time on an unrelated charge.

is needed to corroborate the accomplice's testimony." (Citations and punctuation omitted.) *Telfair v. State*, 234 Ga. App. 444, 445 (507 SE2d 195) (1998). Given the accomplice testimony, Glenn's testimony, and the physical evidence recovered from Fields' apartment, the evidence was more than sufficient to enable a rational trier of fact to find defendant guilty of the offense for which he was convicted beyond a reasonable doubt. See id.; *Jackson*, supra.

2. Fields also argues that the trial court erred in giving two of the State's requests to charge because the charges were submitted too late. Specifically, Fields contends that giving the charges was error because the State did not submit them "at the commencement of trial" as required by Uniform Superior Court Rule 10.3.

While USCR 10.3 requires that a request to charge be submitted "at the commencement of trial," it also provides that "additional requests may be submitted to cover unanticipated points which arise thereafter." Here, the evidence demonstrates that while the armed robbery occurred on February 2, 1995, the indictment incorrectly listed the date as February 5, 1995. Likewise, during the trial, the State and some of its witnesses referred to the robbery date as February 5. The mistake was noticed during the testimony of the State's third witness, and the date of the crime was thereafter referenced as February 2, 1995. Shortly before the charge conference, the State filed two additional requests to charge related to the statute of limitation. Specifically, the State's request to charge no. 5 related that, "The indictment must state the date of the commission of the alleged offense. The State however is not restricted to the proof of the date stated. It is sufficient if the evidence demonstrates that the offense was committed at any time within the statute of limitations." The State's request to charge no. 6 instructed the jury that the statute of limitation for armed robbery is seven years.

The State argued that the additional charges fell within the Rule 10.3 exception of "unanticipated points." The trial court agreed and gave the requested charges. Fields argued that the mistaken date was not "unanticipated" because the record contained the correct date and the State had this information prior to trial. He maintains that the outcome of the trial would have been different "since the indictment alleged February 5, 1995; the testimony involved an event on February 5, 1995, yet Appellant was convicted of an event which occurred on February 2, 1995."

We are unpersuaded. While it appears that the State, by a thorough perusal of the record, could have anticipated the confusion in the dates of the crime, it is not error for the trial court to give a charge authorized by the evidence, even though the charge was not requested in writing by the State at the commencement of trial as required by Rule 10.3. *Ranson v. State*, 198 Ga. App. 659, 663 (8) (402

SE2d 740) (1991). Further, violation of Rule 10.3 carries no express penalties. Id.

While Fields contends that the outcome of the trial would have been different had the charges not been given, we disagree. Clearly, the testimony and indictment related to the same crime, whether it happened on February 5, 1995, or February 2, 1995. The time, place, and actors were the same.

> The general rule is that when the exact date of the commission of the crime is not a material allegation of the indictment, the commission of the offense may be proved to have occurred at any time within the statute of limitations. There is an exception to this rule where the variance between the allegata and the probata surprises and prejudices the defendant by effectively barring an alibi defense he intends to assert. Under the latter circumstances, the trial court should grant the defendant a continuance in order to afford him sufficient time to prepare his defense to meet a new date.

(Punctuation omitted.) *Pickstock v. State*, 235 Ga. App. 451 (1) (509 SE2d 717) (1998). Fields does not allege that the new date was a surprise. Accordingly, since there was no issue of surprise caused by the different dates, Fields was not prejudiced by the State's failure to adhere to Rule 10.3.

*Judgment affirmed. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED OCTOBER 10, 2002.

*David C. Butler*, for appellant.

*Patrick H. Head, District Attorney, Dana J. Norman, Assistant District Attorney*, for appellee.