## A05A0457. NELLOMS v. THE STATE.

(615 SE2d 153)

RUFFIN, Chief Judge.

Although indicted for murder, Roger Nelloms was found guilty of the lesser included offense of voluntary manslaughter.[1] Nelloms appeals, challenging the sufficiency of the evidence. He also argues that the trial court erred in denying his motion for mistrial, denying his request to present evidence of the victim's violent acts, and instructing the jury on voluntary manslaughter. For reasons that follow, we affirm.

1. Nelloms first argues that the evidence supporting his manslaughter conviction was not sufficient and that, given the insufficiency, the trial court should have granted his motion for directed verdict. When reviewing the sufficiency of the evidence and the denial of a directed verdict, we apply the same standard:

> We view the evidence in [a] light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. [Cit.] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty . . . beyond a reasonable doubt.[2]

Viewed in this manner, the evidence shows that on August 23, 1996, Anthony Evans was fatally shot in the back. Shanta Kelly, a witness to the shooting, saw Evans and another man exit a car that stopped outside of her apartment. According to Kelly, the two men stood by a fence near a tree, talking. She testified that Evans "had turned away like he was fixing to walk off," when the other man produced a gun and shot him. Kelly testified that she neither saw Evans with a gun nor observed the two men engage in any physical struggle before, during, or after the shooting. Following the shooting, Evans ran, screaming for help. The shooter also fled. At that point, the car in which the two men had arrived was still parked outside Kelly's apartment.

Another witness, Shanteria Ward, testified that she saw Evans pin another man against a wall for a few seconds after the two men began pushing and shoving each other. As Evans began running

---

[1] Nelloms also was indicted for felony murder, aggravated assault, and influencing a witness. The jury, however, found him not guilty of felony murder and aggravated assault, and the influencing a witness charge was dead-docketed.

[2] (Citation omitted.) *Baggs v. State*, 265 Ga. App. 282, 283-284 (1) (593 SE2d 734) (2004).

away, the other man shot Evans in the back. Ward did not see Evans hit or kick the other man, and she did not observe Evans with any weapon.

Nelloms' roommate at the time, Diallo Marvel, testified that, mere minutes after Marvel heard gunshots on August 23, 1996, Nelloms came home hysterical and told Zak Mitchell, their other roommate, that he had shot someone. Marvel then heard Nelloms call the police and report that someone had tried to rob him. According to Marvel, Nelloms told him that the robber "grabbed him, . . . they wrestled," and Nelloms shot the robber. Mitchell also testified that, when Nelloms came home on August 23, 1996, Nelloms had fresh cuts on his neck and a torn shirt.

A police officer responded to Nelloms' home to investigate the alleged robbery. Nelloms reported that he had been robbed, but did not tell the officer about the shooting. Nelloms also told the officer that he had fled the robbery, leaving his car behind, and the officer drove Nelloms back to the scene. When they arrived a few minutes later, Shanta Kelly saw Nelloms in the back of the police car and told the officer that Nelloms had shot Evans. At trial, however, neither Kelly nor Ward identified Nelloms as the shooter.

Nelloms admitted to police that he fired a shot at Evans, but stated that he did so because he thought he was being robbed and feared for his personal safety. He also testified at trial that he shot Evans during an attempted robbery. According to Nelloms, he was looking for various personal belongings in the neighborhood that had been stolen from his car. Evans, whom Nelloms did not know, approached and stated that he knew where Nelloms could find the stolen property. Evans and Nelloms got into Nelloms' car, and Evans directed him to several locations. At one point, they exited the car and walked toward some apartments.

Nelloms testified that he became uncomfortable with the situation and tried to walk away, but Evans put his hands around Nelloms' throat, hit Nelloms in the head, and called out for others in the area to help him rob Nelloms. As the two struggled, Nelloms pulled out a gun and fired at Evans. According to Nelloms, he did so in self-defense to fend off Evans' attack and to avoid bodily harm. After testifying about his justification defense, Nelloms presented evidence that Evans had committed prior violent acts against third parties.

The jury evidently rejected Nelloms' justification claim and found him guilty of voluntary manslaughter. Nelloms challenges this finding on appeal, arguing that the State presented no evidence from which the jury could infer that he intended to kill Evans or acted with a sudden passion or provocation. He also claims the State failed to prove beyond a reasonable doubt that the killing was not justified. Finally, he argues that the State presented no evidence that he "had

in fact shot at or shot" Evans before it rested its case, entitling him to a directed verdict. We disagree.

A person commits voluntary manslaughter "when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person."[3] Although the evidence was conflicting, the jury was authorized to find that Evans assaulted Nelloms in some manner, thus provoking him, but turned away to leave the scene. Construed favorably to the verdict, the evidence further shows that, after Evans ended his aggression toward Nelloms, Nelloms shot him in the back from a distance of at least two and one-half feet away. Under these circumstances, the jury was entitled to find that Evans sufficiently provoked Nelloms into intentionally firing the fatal shot.[4] It also was authorized to reject Nelloms' claim that he was defending himself.[5]

Finally, although neither Kelly nor Ward identified Nelloms as the shooter at trial, Kelly identified him as Evans' assailant the night of the shooting. This evidence, as well as evidence that Nelloms admitted to police that he fired a gun at Evans, supported the denial of his motion for directed verdict.[6]

2. In a related enumeration of error, Nelloms claims that the trial court erred in instructing the jury on voluntary manslaughter "where there was no evidence of provocation sufficient to excite a reasonable person to act." As discussed above, however, the evidence supported the jury's voluntary manslaughter verdict, including its finding of sufficient provocation. It follows that the trial court did not err in charging the jury on this offense.[7]

3. Nelloms also argues that the trial court improperly prohibited him from introducing evidence of Evans' violent acts against third persons during the State's case. The trial court ultimately permitted such evidence, but did not admit it before Nelloms testified. According to Nelloms, this ruling "was tantamount to a judicial mandate that the defendant must testify." Again, we disagree.

---

[3] OCGA § 16-5-2 (a).

[4] See *Gibbs v. State*, 257 Ga. App. 38, 38-39 (1) (570 SE2d 360) (2002); *Williams v. State*, 245 Ga. App. 670, 671-672 (538 SE2d 544) (2000).

[5] See *Lee v. State*, 202 Ga. App. 708, 710 (1) (415 SE2d 290) (1992); see also *Gibbs*, supra at 39 (jury not required to believe defendant's self-serving testimony that shooting was accidental).

[6] See *Lane v. State*, 255 Ga. App. 274, 275-276 (564 SE2d 857) (2002).

[7] See *Williams*, supra at 672 (2); *Wright v. State*, 182 Ga. App. 570, 571 (2) (356 SE2d 531) (1987).

Although a defendant generally may not introduce evidence of a victim's violent acts against third persons, an exception exists when the defendant raises a justification defense.[8] Under that circumstance, the evidence is admissible " 'to show the victim's character for violence or tendency to act in accordance with his or her character as it relates to the defendant's claim of justification.' "[9] Such evidence, however, may only be introduced if the defendant first makes a prima facie showing of justification.[10] To make this showing, the defendant must demonstrate that " 'the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly seeking to defend himself.' "[11] The trial court exercises its discretion in determining whether a defendant has made the prima facie showing, and we will not reverse that determination absent an abuse of discretion.[12]

On appeal, Nelloms argues that a prima facie case of justification was established before the State rested its case through evidence that: (1) Evans pinned Nelloms against a wall; (2) Nelloms ran into his house screaming that he had been robbed and reported the robbery to the police; (3) Nelloms had fresh cuts or bruises on his neck; and (4) Nelloms reported to police that he had shot at someone as he tried to fend off a robber.

Such evidence arguably shows that Evans was the aggressor and assaulted Nelloms. But, given the other evidence presented by the State, particularly the testimony from Kelly and Ward that Evans turned away or ran from Nelloms before the shooting, as well as evidence that Evans was shot in the back from at least two and one-half feet away, it does not necessarily demonstrate that Nelloms honestly sought to defend himself when he fired a gun at Evans.[13] Accordingly, the trial court did not abuse its discretion in refusing to admit evidence of Evans' prior violent acts before the State rested its case.[14]

4. Finally, Nelloms argues that the trial court erred in denying his motion for mistrial after a witness for the State testified on his

---

[8] See *Shackelford v. State*, 270 Ga. App. 12, 14 (1) (606 SE2d 22) (2004).

[9] Id.

[10] See id.

[11] Id.

[12] See id.

[13] See *Felder v. State*, 273 Ga. 844, 846 (4) (545 SE2d 918) (2001); *Shackelford*, supra at 15; *Haynes v. State*, 234 Ga. App. 272, 274 (2) (507 SE2d 151) (1998).

[14] See *Shackelford*, supra; see also *Harrison v. State*, 268 Ga. 574, 577 (3) (492 SE2d 218) (1997) ("[I]f a trial court correctly determines that the testimony of witnesses other than the defendant does not establish a prima facie case of justification, the trial court's insistence that a defendant establish a prima facie case before presenting evidence of the victim's prior acts of violence is not the equivalent to a judicial mandate that the defendant must testify.").

post-arrest silence. The record shows that, when the State asked a police officer whether Nelloms was transported to the police station after his arrest, the officer replied: "Yes. He was transported to the homicide office, and once at the homicide office, he decided that he didn't want to make any. . . ." Before the officer finished the sentence, defense counsel objected, stating that the prosecutor could not "go into that," and the trial court sustained the objection.

Nelloms then moved for a mistrial, which was denied. The trial court, however, gave a curative instruction to the jury, directing jurors to disregard the officer's testimony. The trial court also asked whether any of the jurors could not do so, and none responded. Nelloms did not renew his motion for mistrial after the curative instruction.

"It is well settled that where a defendant objects and moves for a mistrial during the examination of a witness, and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion."[15] Because Nelloms failed to renew his motion for mistrial or otherwise object after the trial court gave its curative instruction, he has waived this issue for appellate review.[16]

Moreover, even if Nelloms had preserved the issue for review, we cannot find that the trial court erred in refusing to grant a mistrial. An improper comment at trial regarding a defendant's post-arrest silence does not necessarily require reversal.[17] The trial court exercises its discretion in determining whether to grant a mistrial, and that ruling will not be disturbed on appeal " 'unless it is clear that a mistrial was essential to preserve the right to a fair trial.' "[18] In this case, the police officer did not actually testify that Nelloms refused to make a statement to police. Under these circumstances, the trial court did not abuse its discretion in denying Nelloms' motion for mistrial.[19]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MAY 13, 2005 —
RECONSIDERATION DENIED MAY 27, 2005 — ■

*Caprice R. Jenerson*, for appellant.

---

[15] *Rambo v. State*, 266 Ga. App. 791, 793 (2) (598 SE2d 85) (2004).

[16] See id.

[17] See *Knolton v. State*, 268 Ga. App. 78, 79 (601 SE2d 467) (2004).

[18] Id.

[19] See id. at 79-80; *Williams v. State*, 245 Ga. App. 259, 263 (2) (537 SE2d 125) (2000).

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.