## A05A1260. DICKERSON v. THE STATE.
### (621 SE2d 831)

RUFFIN, Chief Judge.

A jury found Carlos Dickerson guilty of armed robbery and possessing a firearm during the commission of a felony.[1] Dickerson appeals, asserting that insufficient evidence supports his convictions. He also claims that the trial court erred in refusing to grant a mistrial and in overruling his objections after two witnesses violated a pretrial ruling. Finally, he argues that he received ineffective assistance of counsel. For reasons that follow, we affirm.

1. Dickerson argues that the trial court should have directed a verdict in his favor because the State failed to present sufficient evidence against him. We disagree.

"On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict."[2] So viewed, the evidence shows that on the night of January 5, 2003, Moses Britt was driving a MARTA bus along his regular route in Atlanta. Shortly after 10:00 p.m., he arrived early at a predetermined "layover" location and, as required by the bus schedule, stopped there for a few minutes. At that point, the bus had one passenger, Andrew Cullin, who disembarked to go to a nearby store, but who planned to return before the bus continued on its route.

After Cullin left the bus, Britt closed the door to await his scheduled departure time. Two men approached, and Britt — who believed that they wanted to ride the bus — opened the door. Demanding money, one of the men placed a chrome-plated gun in Britt's side. The two men took Britt's money, wallet, and coat, then fled into a nearby apartment complex. Britt did not look at the man holding the gun, but he saw the other man's face and recognized him as someone who had previously ridden the bus.

---

[1] The jury also found him guilty of aggravated assault with intent to rob, but the trial court merged that count with the armed robbery conviction.

[2] *Ross v. State,* 264 Ga. App. 830 (1) (592 SE2d 479) (2003).

According to Cullin, he saw Raymond Burston and Dickerson approaching the bus as he walked to the store. Cullin knew Burston from school and Dickerson from his neighborhood, although he did not know Dickerson's name. Cullin testified that he entered the store, made a purchase, then returned to the bus stop. As he returned, he saw Burston and Dickerson running from the bus with a coat.

A few days after the robbery, Britt reviewed a photographic lineup compiled by police and identified Burston as the robber he recognized from his bus route. Cullin also selected Burston's photograph from a photographic lineup.

Shayla Hardin, who had dated Dickerson "off and on," testified that, on January 6, 2003, she reported to police that she had seen Dickerson and another man "rob the MARTA bus" the night before. She also told police that Dickerson had a gun with a black handle and silver barrel. At trial, however, Hardin recanted this statement, asserting that she falsely reported Dickerson's involvement because she was angry with him.

Burston pled guilty and testified against Dickerson. He and Dickerson were near the layover site on the night of the robbery and saw the parked bus. According to Burston, Dickerson suggested that they rob the driver. As the two men boarded the bus, Dickerson pulled out a silver and black gun, then told the driver to "give it up." Dickerson took the driver's wallet, grabbed the driver's coat, and the two fled behind a nearby apartment building.

Dickerson argues on appeal that Burston's testimony was not sufficiently corroborated. It is true that a felony conviction cannot be based on accomplice testimony alone; "there must be independent corroborating evidence, either testimony from another witness or corroborating circumstances, which connects the accused to the crime."[3] The corroborating evidence, however, may be slight, and the sufficiency of that evidence is a matter for the jury to determine.[4]

In this case, Burston's testimony was corroborated by substantial evidence, including: Britt's testimony about the chrome-plated gun used in the robbery, as well as the theft of the coat and the direction in which the robbers fled; Cullin's testimony that Dickerson and Burston approached the bus, then ran from the scene carrying a coat; and Hardin's report to police that Dickerson robbed the bus and possessed a silver and black gun. Although Hardin recanted that report on the witness stand, her prior inconsistent statement consti-

---

[3] *Reynolds v. State*, 267 Ga. App. 148, 151 (3) (598 SE2d 868) (2004).
[4] See id. at 151-152.

tuted substantive evidence on which the jury could rely.[5] And any conflicts in the witnesses' testimony created credibility issues for the jury — not the courts — to resolve.[6]

The State's evidence authorized the jury to find Dickerson guilty beyond a reasonable doubt of the charged offenses.[7] Accordingly, the trial court properly denied the motion for a directed verdict.[8]

2. Prior to trial, Dickerson moved to exclude evidence that Cullin had identified him in a photographic lineup prepared by police. Citing a discovery violation, the trial court granted the motion.[9] Nevertheless, two witnesses presented by the State — Cullin and Detective Carlos Dixon — referred to the evidence to varying degrees. At each point, defense counsel objected, and he twice moved for a mistrial. The trial court sustained the objection made during Cullin's testimony and gave curative instructions, but declined to grant a mistrial. The trial court overruled the two objections interposed during Dixon's testimony, noting that, at the time of the objections, Dixon had not stated that Cullin identified Dickerson in the photographic lineup.[10]

Dickerson argues that the trial court erred in denying his motion for mistrial with respect to Cullin's testimony. But the record shows that Dickerson did not renew the motion after the trial court initially denied it and gave curative instructions. Accordingly, he has waived this issue for appellate review.[11]

Dickerson further claims that the trial court erred in overruling his two objections during Dixon's testimony. As found by the trial court, however, on both occasions, Dixon had not yet mentioned that Dickerson was included in or identified from a photographic lineup. And the trial court warned the prosecutor and Dixon to stay away from the subject. Under these circumstances, Dickerson cannot show that the trial court abused its discretion in overruling the objec-

---

[5] See *Gunsby v. State*, 248 Ga. App. 18 (1) (545 SE2d 56) (2001).

[6] See *Fields v. State*, 257 Ga. App. 842, 843 (1) (572 SE2d 697) (2002).

[7] See *Reynolds*, supra at 151-152; *Ross*, supra at 830-831; *Fields*, supra at 843-844.

[8] See *Fields*, supra.

[9] On appeal, Dickerson argues that the trial court also excluded evidence that Cullin identified Burston from a photographic lineup. It is clear from the record, however, that Dickerson's motion in limine — and the trial court's ruling — related to the pretrial identification of Dickerson, not Burston.

[10] The trial court initially sustained one of these objections, but then, after discussing the matter, overruled it.

[11] See *Nelloms v. State*, 273 Ga. App. 448, 452 (4) (615 SE2d 153) (2005) (" 'It is well settled that where a defendant objects and moves for a mistrial during the examination of a witness, and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion.' ").

tions.[12] Moreover, even if some error occurred, he has not established that the objected-to testimony harmed him.[13]

3. Finally, Dickerson asserts that he received ineffective assistance of counsel. To succeed in this claim, Dickerson " 'must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, there would have been a different outcome at trial.' "[14] Following a hearing on Dickerson's motion for new trial, the trial court rejected his ineffective assistance arguments. We find no error.[15]

(a) At trial, the prosecutor asked Burston how long he had known Dickerson and when he learned Dickerson's "real name." Burston responded that he knew Dickerson "from Metro" and that the two had been acquainted since they were "locked up in Metro." Dickerson argues that trial counsel should have objected to this testimony because it improperly placed his character in issue.

At the new trial hearing, counsel testified that he raised no objection because he did not want to draw attention to Burston's statements. And he did not ask for curative instructions because the request "would have just brought more attention to the issue of character." Such "[t]actical decisions regarding what objections to make do not amount to ineffective assistance."[16] Accordingly, the trial court properly rejected Dickerson's claim on this ground.[17]

(b) Dickerson also argues that trial counsel should have objected to testimony from Dixon that raised character issues. At one point during trial, the prosecutor asked Dixon what he did next in the robbery investigation. Dixon responded: "[Shayla Hardin] provided us with a Fulton County ribbon that Dickerson had and it was a wristband with his picture and jail number on it or whatever and that's how we were able to [get] his pertinent information."

Trial counsel could not recall why he did not object to this testimony. The record shows, however, that Dixon made only a passing reference to Dickerson's prior incarceration. And in Georgia,

---

[12] See *Moore v. State*, 265 Ga. App. 511, 514 (3) (594 SE2d 734) (2004) ("The admission of evidence is committed to the sound discretion of the trial court, and this Court will not reverse a trial court's decision absent an abuse of discretion.").

[13] See *Reed v. State*, 248 Ga. App. 107, 110 (2) (545 SE2d 655) (2001) ("[H]arm, as well as error, must be shown for reversal.").

[14] *Abernathy v. State*, 252 Ga. App. 635, 637 (5) (556 SE2d 859) (2001).

[15] See id. ("We must uphold the trial court's finding that [the defendant] received effective assistance of counsel unless that finding is clearly erroneous.").

[16] *Bogan v. State*, 255 Ga. App. 413, 415-416 (3) (b) (565 SE2d 588) (2002).

[17] See *Milner v. State*, 271 Ga. 578, 579 (2) (522 SE2d 654) (1999); *Bogan*, supra; *Abernathy*, supra at 638 (5) (d).

"a passing reference to a defendant's record does not place his character in evidence."[18]

Noting that Dixon testified after Burston, Dickerson argues that Dixon's reference to his prior incarceration constituted the third reference at trial and thus cannot be viewed as "passing." We disagree. All three references were brief, vague, and not directly responsive to the prosecutor's question. Under these circumstances, trial counsel was not deficient in failing to object to such testimony.[19]

(c) Dixon testified that, in an effort to obtain Burston's confession, he told Burston that Dickerson, who was in custody, probably had already implicated Burston in the robbery. According to Dixon: "Once I told [Burston] that, he started to come around . . . because . . . I think [he and Dickerson] had made an agreement . . . that if anybody got locked up and one told on the other one[,] I will rat you out if you rat me out. That's the mentality he kind of had." Dickerson argues that counsel should have objected to this testimony as speculative, nonprobative, irrelevant, and based upon hearsay.

As an initial matter, we cannot understand — and Dickerson has done little to enlighten us — how Dixon's testimony could be considered hearsay. Dixon clearly stated that he *thought* Burston and Dickerson had some sort of agreement. He did not testify that Burston described any agreement or that such agreement actually existed. The testimony, therefore, does not fit within the definition of hearsay.[20]

Moreover, as noted by trial counsel at the new trial hearing, Burston testified that he confessed to police because he believed that Dickerson had already implicated him in the robbery. In many ways, therefore, Dixon's testimony was cumulative of Burston's testimony and not likely to affect the outcome of the trial.[21] Dickerson now argues that Dixon's statement prejudiced him by allowing the jury to "infer[ ] the existence of a pre-existing criminal agreement between [himself] and Burston." But Burston had already testified that he and Dickerson entered a criminal agreement to rob the bus. We thus cannot see how evidence of another agreement — specifically, to "rat out" each other — prejudiced Dickerson. Accordingly, even if the

---

[18] *Johnson v. State*, 256 Ga. 604, 605 (2) (351 SE2d 623) (1987).

[19] See *Gordon v. State*, 273 Ga. 373, 379 (4) (f) (541 SE2d 376) (2001); *Lemming v. State*, 272 Ga. App. 122, 129 (2) (612 SE2d 495) (2005) (characterizing three references to defendant's incarceration as "passing").

[20] See *Armstead v. State*, 255 Ga. App. 385, 389 (3) (565 SE2d 579) (2002) ("By definition, evidence is hearsay when a witness at trial offers evidence of what someone else said or wrote, outside of court, and the proponent's use of the evidence essentially asks the jury to assume that the out-of-court declarant was not lying or mistaken when the statement was made.").

[21] See *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004).

testimony might be considered irrelevant or speculative, counsel's failure to object to it does not require reversal.[22]

(d) Dickerson claims that trial counsel should have objected, moved for a mistrial, or asked for curative instructions when Dixon allegedly vouched for Shayla Hardin's credibility. The record shows that trial counsel cross-examined Dixon extensively about his interview with Hardin and whether her statement to police corresponded with statements from other witnesses. At one point during this inquiry, Dixon responded: "When we interviewed [Hardin], she gave details that only a person who was there could have known and that's why I had cause to believe her." According to trial counsel, he did not object to this testimony because, in his view, Dixon was not vouching for Hardin's veracity, but was trying to answer his inquiry about consistencies — or inconsistencies — in the witnesses' statements.

Counsel's decisions regarding whether to interpose certain objections are usually matters of trial strategy that provide no basis for reversal.[23] Moreover, even if some deficiency occurred, we find no error in the trial court's refusal to grant a new trial on this ground. As discussed above, Britt identified Burston as one of the robbers, and Cullin identified Dickerson as the individual accompanying Burston. Burston also testified that Dickerson took part in the robbery, and Britt and Cullin corroborated significant portions of his testimony. Under these circumstances, we cannot find that Dixon's allegedly vouching testimony so prejudiced Dickerson's defense that it affected the trial's outcome.[24]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 4, 2005.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Assistant District Attorney*, for appellee.

---

[22] See id.; *Shelnutt v. State*, 242 Ga. App. 723, 727 (4) (531 SE2d 122) (2000).
[23] *Gosnell v. State*, 247 Ga. App. 508, 511 (3) (544 SE2d 477) (2001).
[24] See id. at 511-512.