## A06A1007. WHEELER v. THE STATE.
(635 SE2d 415)

RUFFIN, Chief Judge.

A jury found Bryant Wheeler guilty of driving with a suspended license and simple battery.[1] Wheeler appeals, arguing that the lack of direct evidence that he drove a vehicle warrants reversal of his conviction for driving with a suspended license. He also claims that the State coerced the victim into testifying against him and thus his conviction for simple battery should also be reversed. As these arguments lack merit, we affirm.

The record reveals that Wheeler was in a volatile relationship with Amy Miller, and he often spent the night at Miller's home. On the morning of June 16, 2005, Miller told Wheeler that she was leaving for work, but Wheeler wanted to drive Miller to work and take her car. Miller told Wheeler she did not want him to take her car, and as she tried to leave, Wheeler blocked the door to prevent her from going. The two fought, and Wheeler grabbed Miller and threw her into a wall, causing her to fall. Miller tried to call 911, but Wheeler wrested the phone from her. However, Miller was able to call her co-worker, Kevin Williams, using a two-way radio, and she told him that Wheeler was "beating [her] ass" and asked him to call 911.

According to Miller, Wheeler obtained the ignition keys from her and said "he was taking [her] to work." The two got into Miller's car, and Miller drove to her workplace. When she reached the office, she parked within eight parking spaces of the front door to the business and hurried inside, leaving the keys in the ignition. Williams was on the phone with the 911 operator when Miller walked in, crying.

---

[1] Wheeler was acquitted of family violence battery and a second count of simple battery.

The police arrived, including Officer Scott. According to Scott, he did not see Miller's car when he arrived at the business although he drove the entire length of the parking lot. Scott spoke with Miller, and he saw that she had bruises and a slight scratch on her wrist. Scott then put a "be on the lookout" alert for Miller's car. While Scott was in his police car writing his report, Miller approached him and said that she had called Wheeler, but that he would not return her car if he saw a police car in the parking lot. Accordingly, Scott pulled his car to the side of the building so that it could not be seen. Five to ten minutes later, Scott returned to the front of the building at which point Miller told him that Wheeler had just returned the car and parked it "at the far end of the parking lot." Scott saw Wheeler walking away from the car, and he detained Wheeler to question him about the incident. Wheeler ultimately was arrested. At the time of his arrest, Wheeler had a suspended driver's license.

1. In his first enumeration of error, Wheeler contends that there was insufficient evidence that he drove with a suspended license. Specifically, Wheeler points to the fact that no witness actually saw him drive Miller's car and thus there is no direct evidence of his guilt. However, a defendant may be convicted of a crime based solely upon circumstantial evidence. And "to sustain a judgment of conviction based upon circumstantial evidence, the evidence need not exclude *every* inference or hypothesis except the guilt of the accused, but only *reasonable* inferences and hypotheses, so as to justify the inference, beyond a reasonable doubt, of guilt."[2] Whether a hypothesis is reasonable is generally a jury question.[3] Here, the evidence shows that Miller left the car, with the key in the ignition, while Wheeler was still in the car. When the police arrived, however, the car was no longer in the parking lot. After Miller summoned Wheeler back, police discovered Miller's car parked in a different area of the parking lot and saw Wheeler walking away from it. Given this evidence, the jury was authorized to conclude that Wheeler had driven the car.[4]

2. In his second enumeration of error, Wheeler contends that the police coerced Miller into testifying against him. He bases this argument, in large part, on the fact that Miller recanted her story to police approximately one week after Wheeler was arrested. Miller wrote a letter to Wheeler's attorney, asserting that she had injured

---

[2] (Punctuation omitted; emphases in original.) *Marsengill v. State*, 275 Ga. App. 840, 841 (622 SE2d 58) (2005).

[3] See id.

[4] See id. at 841-842 (1); *Nolan v. State*, 255 Ga. App. 63, 63-64 (1) (564 SE2d 464) (2002).

herself by accident, that Wheeler had never driven the car from the parking lot, and that she had lied to police when she told them he had stolen the car.

Wheeler's attorney cross-examined Miller about her changing her story, and she admitted lying in the letter she had sent to his attorney. She expressed concern about her co-workers getting subpoenaed and having to come to court to testify. Miller also testified that she was afraid that she would go to jail if she changed her story on the stand.

On appeal, Wheeler contends that the State prevented Miller from testifying freely by threatening her with criminal sanctions if she deviated from the report she gave to police during her trial testimony. Wheeler cites OCGA § 16-10-93 for the proposition that it is unlawful for any person to deter a witness from testifying freely and fully. However, there is no evidence that the State ever threatened to prosecute Miller. Although Miller testified that she told the truth at trial because she was afraid of lying under oath, Wheeler points to nothing that supports his suggestion that the State "coerced" Miller into testifying in this manner.

Moreover, Wheeler's argument on appeal is predicated upon his belief that Miller *lied* on the stand. He cites *Chatterton v. State*[5] for the proposition that, where evidence shows a witness testified falsely, a defendant may be entitled to a new trial. As pointed out by the State, however, the evidence suggests — and the jury believed — that Miller's trial testimony was true.

Finally, Wheeler fails to acknowledge that Miller's statement to police would have been tendered into evidence regardless of what version of events she recounted on the stand. It is well settled that a prior inconsistent statement constitutes substantive evidence.[6] Indeed, it is just this rule that allowed Wheeler to tender into evidence Miller's letter in which she recanted her initial story to the police. Under circumstances such as this — where there are multiple versions of events or a witness changes his or her testimony — the jury is responsible for ascertaining which version is true.[7] Accordingly, this error presents no basis for reversal.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

---

[5] 221 Ga. 424, 429 (1) (144 SE2d 726) (1965).

[6] See *Gonzalez v. State*, 277 Ga. App. 362, 364-365 (1) (626 SE2d 569) (2006) (" '(A) prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes.' ").

[7] See *Dickerson v. State*, 275 Ga. App. 695, 697 (1) (621 SE2d 831) (2005) (conflict in witnesses' testimony creates credibility issues for the jury to resolve).

DECIDED AUGUST 17, 2006.

*David W. White*, for appellant.

*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Robby A. King, Assistant Solicitors-General*, for appellee.