## A09A0602. WILLIAMS v. THE STATE.

(679 SE2d 377)

PHIPPS, Judge.

In this out-of-time appeal of his conviction of voluntary manslaughter, Walter Lee Williams complains of the trial court's refusal to admit evidence of violence by the victim toward a third party unless he testified. As a result of that ruling, Williams took the stand and testified, although he would not have otherwise done so. Williams charges the trial court with error, because the state itself laid the foundation for admission of such evidence through presentation in its case-in-chief of pretrial statements made by Williams. We agree that the trial court committed harmful error and reverse.

In May 1996, an indictment was returned charging Williams with having murdered his girlfriend, Carrie Louise Searcy, and

---

152

committed other offenses on February 17, 1996. At a jury trial in September 1999, Williams was convicted of voluntary manslaughter. His motion for new trial, originally filed in March 2000 but later amended, was denied in July 2004. Pursuant to an unopposed motion for out-of-time appeal filed by him in May 2008, he now appeals.

The state's evidence showed that on the evening in question uniformed police officers, in responding to a 911 call placed by Williams, found Searcy's corpse on the floor of the master bedroom of the apartment in which she and Williams had resided. She had died as a result of multiple shotgun wounds. Williams, the only other person in the apartment, was arrested, taken to police headquarters, and interviewed by a homicide detective.

In a statement to the detective, Williams acknowledged that he had shot Searcy numerous times. He admitted that he had been drinking, and he maintained that he did not fully realize what had happened until afterward. He claimed, however, that he had shot Searcy because she, in a drug-induced fit of anger, attempted to stab him with a knife that was found in the room along with the shotgun. Williams further related to the detective that after Searcy grabbed a butcher knife from the kitchen and began trying to stab him with it, he retreated into the bedroom; that she followed him there and cornered him; and that he then grabbed a shotgun from the closet and fired it at her, because she persisted in trying to stab him despite his attempts to fend her off. Williams's pretrial statement was reduced to writing and signed by him. The signed statement was admitted in evidence and read to the jury by the homicide detective. A tape of Williams's 911 call was also played to the jury.

Shortly before the state rested its case, defense counsel reminded the court of Williams's intent to introduce evidence that in March 1981 Searcy had killed her then-boyfriend by stabbing him in the chest with a knife during a domestic argument. The prosecuting attorney argued, however, that the evidence as to the extent of Searcy's wounds contradicted Williams's claim that his shooting of her was a justifiable act of self-defense, and that Williams needed to take the stand and testify in order to establish the requisite foundation for admission of evidence of violent acts by the victim against a third party. Although defense counsel asserted that the requisite foundation had been established through the state's admission of the tape of his 911 call and his statement to the homicide detective, and that Williams did not want to testify, the trial court accepted the prosecutor's argument and ruled that it would not admit evidence of Searcy's stabbing of her former boyfriend unless Williams testified.

After the state rested its case, Williams then took the stand and

testified to a version of events consistent with his pretrial statement. Following his cross-examination by the prosecuting attorney, another defense witness was called to testify about Searcy's killing of her former boyfriend by stabbing him.

Under the Fifth Amendment, a criminal defendant has a constitutional right not to testify and to thereby avoid having to take the stand and face cross-examination.[1]

> A necessary prerequisite to the admission of evidence of a victim's violence is the defendant's establishment of a prima facie showing of justification. A prima facie case of justification requires a showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly trying to defend [himself].[2]

"The trial court exercises its discretion in determining whether a defendant has made [a] prima facie showing, and we will not reverse that determination absent an abuse of discretion."[3] But

> [i]t is possible to establish a prima facie case through the testimony of witnesses other than the defendant. However, if a trial court correctly determines that the testimony of witnesses other than the defendant does not establish a prima facie case of justification, the trial court's insistence that a defendant establish a prima facie case before presenting evidence of the victim's prior acts of violence is not the equivalent to a judicial mandate that the defendant must testify.[4]

Therefore, if the trial court had correctly determined that other evidence did not establish a prima facie case of justification, the trial court would not have erred in ruling that Williams could not present evidence of violence by Searcy toward her former boyfriend without testifying. The trial court, however, incorrectly determined that the evidence presented by the state did not establish the prima facie case. In his statement to police that was admitted in evidence as part of the state's case-in-chief, Williams claimed, just as he did in his trial testimony, that he had shot Searcy because of her relentless attempts to stab him with the knife despite his retreat into the bedroom and

---

[1] See *Espinosa v. State*, 285 Ga. App. 69, 76 (2) (d), n. 19 (645 SE2d 529) (2007), citing *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[2] *Harrison v. State*, 268 Ga. 574, 577 (3) (492 SE2d 218) (1997) (citations and punctuation omitted).

[3] *Nelloms v. State*, 273 Ga. App. 448, 451 (3) (615 SE2d 153) (2005) (footnote omitted).

[4] *Harrison*, supra (citations omitted).

154

other efforts to fend off her attack. Unquestionably, the court did not abuse its discretion in determining that, through his trial testimony, Williams made a prima facie showing of justification. Therefore, the court did abuse its discretion in determining that such showing had not been made through the state's introduction of his statement to police.

Williams was thus presented with the constitutionally impermissible Hobson's choice of foregoing either (a) his right not to take the stand and become subject to cross-examination or (b) his entitlement to present evidence in support of his defense of justification.

Citing *Taylor v. State*,[5] the state claims harmless error. In *Taylor*, defense counsel sought to cross-examine the victim concerning prior assaults by him upon the defendant. *Taylor* held that the trial court did not err in prohibiting this line of cross-examination, because the defendant had not made the three-part prima facie showing required for admission of such evidence. *Taylor* further noted, however, that because the defendant had later offered testimony to the same effect, any error in the trial court's ruling was harmless.[6] *Taylor* is distinguishable, because it did not present the question of harm caused to the defendant by a trial court's erroneous determination that evidence of violence by the victim could not be admitted without the defendant's testimony.

Here, the trial court's error in requiring Williams to testify as a condition to admission of evidence of the victim's prior act of violence was of federal constitutional dimension.

> Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. Whether a constitutional violation constitutes harmless error depends on whether the State can prove beyond a reasonable doubt that the error did not contribute to the verdict.[7]

By having Williams take the stand, the defense gave the prosecution an opportunity to elicit testimony from him on cross-examination showing, among other things, that his proficiency in self-defense as

---

[5] 180 Ga. App. 200-201 (1) (348 SE2d 582) (1986).

[6] Compare *Chapman v. State*, 258 Ga. 214, 215-216 (2) (367 SE2d 541) (1988). In *Chapman*, the state argued that the trial court's error in refusing to admit the testimony of two witnesses showing the victim's general reputation for violence in the community was harmless, because similar testimony was admitted from another witness. Our Supreme Court rejected that argument because the jury, for various reasons, could have given greater weight to the testimony of the witnesses who were not allowed to testify.

[7] *Lowery v. State*, 282 Ga. 68, 75 (4) (b) (ii) (646 SE2d 67) (2007) (citations and punctuation omitted).

a result of his military training had enabled him to disarm Searcy when she had attempted to attack him with weapons on prior occasions. The state was thus able to undermine Williams's defense of self-defense in a way that would not have been possible if he had not testified. Therefore, the state has not carried its burden of showing beyond a reasonable doubt that the trial court's error did not contribute to the verdict. Remaining issues, which relate to a claim by Williams of ineffective assistance of trial counsel, are moot.

*Judgment reversed. Smith, P. J., and Bernes, J., concur.*

DECIDED JUNE 1, 2009.

*Laurence H. Margolis*, for appellant.

*Paul L. Howard, Jr., District Attorney, David K. Getachew-Smith, Assistant District Attorney*, for appellee.