A98A0013. GLOVER v. THE STATE.
(498 SE2d 300)

ELDRIDGE, Judge.

In this appeal, defendant Rodney Glover challenges his convictions for homicide by vehicle, fleeing or attempting to elude a police officer, reckless driving, driving under the influence of marijuana and alcohol, and driving with a suspended license. The charges stemmed from a traffic incident during which Glover's automobile struck a highway median and was propelled into the air. Both Glover and his passenger, Darryle Woodruff, were ejected from the car and thrown to the pavement. Woodruff died as a result of his injuries, and Glover was seriously injured. For the reasons set forth below, we affirm Glover's conviction.

The facts of this case, viewed in the light most favorable to the verdict, *Grant v. State*, 195 Ga. App. 463, 464 (393 SE2d 737) (1990), are as follows: at approximately 2:00 a.m. on January 26, 1996, Clayton County police officers were conducting a routine roadblock on

Highway 42, approximately 150-200 feet from the DeKalb County line. Officer David Moats of the Clayton County Police Department was working at the roadblock and observed a red Mustang automobile approaching; he noticed that the driver appeared to be drinking out of a container. When the Mustang stopped at the roadblock, Officer Moats observed a can of beer between the driver's legs and smelled a very strong odor of alcohol coming from the driver; the officer also noticed that the driver's eyes were extremely red and glassy, and that the driver's speech was slurred. Officer Moats requested a driver's license from the driver, who produced a temporary paper license bearing the name of "Rodney Keith Glover"; the license had expired over a year before. When Officer Moats directed Glover to pull to the edge of the road, Glover fled north on Highway 42 into DeKalb County. Officer Moats and two other Clayton County officers, Sergeant Bayne and Officer Summers, pursued Glover in marked police cars, with emergency lights and sirens activated. During the chase, Glover jumped a curb, ran a red light, and repeatedly attempted to strike pursuing police cars; the entire chase was videotaped from Officer Moats' vehicle, and the tape was played for the jury.

After Glover's car entered Interstate 285, police officers attempted to "box" the car against the center median in order to slow it down and bring Glover safely to a stop. However, Glover suddenly struck the center median on the left, bounced into a pursuing police car on the right, and again struck the median; the car propelled into the air, repeatedly overturned, and landed right side up on the highway. Both Glover and Woodruff were ejected; the videotape showed Glover flying through the air and striking the median wall before landing on the highway. Immediately following the collision, Officer Moats approached Glover and identified him to other officers as the driver of the vehicle. However, Woodruff's wallet, which contained his habitual violator driver's license, was found on the highway and was mistakenly placed with Glover. Glover, unconscious and seriously injured, was handcuffed and transported to DeKalb Medical Center under Woodruff's name. At the same time, Woodruff was transported to Grady Hospital under Glover's name. Glover's sister was contacted mistakenly by police and hospital officials regarding Woodruff's condition, and she realized that a mistake had been made regarding the identities of the men. She then contacted DeKalb Medical Center, and confirmed that the man being treated there was, in fact, her brother, Rodney Glover.

Following his 30-day hospital stay, Glover was arrested and indicted. He was tried by a jury in DeKalb County Superior Court on March 11 through 14, 1997, and was convicted on all counts. He filed a motion for new trial, which was later amended; following a hearing,

the motion was denied. Glover appeals.

1. Glover first asserts that the trial court erred in allowing testimony concerning alcohol and drug levels in his blood and urine without requiring the State to establish a chain of custody. However, during the trial, Glover failed to object to testimony of a hospital employee regarding the blood and urine tests. Upon cross-examination, defense counsel extensively questioned the witness on testing procedures, specifically on who determined the threshold level at which patients would be tested for THC, an active ingredient in marijuana. During this questioning, defense counsel referred directly to the written hospital laboratory report which established that Glover had THC in his system at the time of the collision. After the witness repeatedly testified that he did not know the answer to Glover's questions, the State objected. Defense counsel responded to the objection by saying "I object to [the witness'] testimony in total"; he gave no basis for the objection and did not invoke a ruling from the trial court. The trial court overruled the State's objection and allowed Glover to pursue his cross-examination; no further objection was made to the witness' testimony.

In his amended motion for a new trial, Glover asserted for the first time the State's alleged failure to present chain of custody evidence regarding his blood and urine tests. Following the hearing on Glover's motion, the trial court found that Glover had waived his objection to the witness' testimony by failing to raise the issue at trial. We agree.

"In order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon that specific ground. *Norman v. State*, 197 Ga. App. 333, 334 (3) (398 SE2d 395) (1990)." *Smith v. State*, 222 Ga. App. 366, 368 (3) (a) (474 SE2d 272) (1996); *McGee v. State*, 205 Ga. App. 722, 726 (423 SE2d 666) (1992). " 'Where [the defendant] asserts error and no objection is made at the trial it cannot be made the basis of appellate review, either as a ground of a motion for new trial, or as a ground of enumerated error on direct appeal.' " *Jones v. State*, 190 Ga. App. 416, 418 (3) (379 SE2d 189) (1989). Glover's failure to object to the evidence at trial on the ground asserted on appeal waived this objection.

Further, defense counsel utilized the challenged evidence during cross-examination of the hospital employee. A " 'defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. (Cits.)' *Jackson v. State*, 234 Ga. 549, 553 (216 SE2d 834) (1975)." *Roulain v. Martin*, 266 Ga. 353, 354 (466 SE2d 837) (1996); *Joyner v. State*, 208 Ga. 435, 438 (67 SE2d 221) (1951); *Jones v. State*, supra; *Keno v. Alside, Inc.*, 148 Ga. App. 549 (251 SE2d 793) (1978). A defendant " 'cannot complain of a result his own procedure or conduct aided in causing. (Cits.)' "

*Holtapp v. City of Fayetteville,* 208 Ga. App. 606, 607 (431 SE2d 403) (1993); *Rider v. State,* 207 Ga. App. 519 (428 SE2d 423) (1993). There was no error.

2. In his second enumeration, Glover asserts that the trial court erred in allowing the State to elicit testimony regarding the blood and urine evidence even though the State failed to comply with the provisions of OCGA § 40-6-392. However, Glover failed to raise this objection at the time the evidence was offered, and therefore, it was waived. *Carr v. State,* 222 Ga. App. 776, 778 (476 SE2d 75) (1996); see also Division 1, supra.

Further, although Glover subsequently asserted this error in his motion for a directed verdict at the close of evidence, "[i]t is well settled in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection. Although a party may move to strike *illegal evidence* any time before the case goes to the jury, even where no objection was made when it was admitted, the result[s] of the blood [and urine tests] admitted in this case, without objection, despite the State's failure to satisfy the foundational requirement that the blood [and urine were] withdrawn by a person qualified under OCGA § 40-6-392 (a) (2), w[ere] not illegal evidence subject to a subsequent motion to strike." (Citations omitted; emphasis in original.) *Carr v. State,* supra at 778; see also *Corley v. State,* 192 Ga. App. 35, 36 (383 SE2d 586) (1989). The trial court did not err in denying Glover's motion for a new trial on this basis.

3. In his third enumeration, Glover asserts that the evidence was insufficient to support the verdicts. In arguing this enumeration at the hearing on the motion for new trial, Glover specifically claimed that there was insufficient evidence to support a finding by the jury that he was the driver of the vehicle. We disagree.

"On appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State,* supra at 464 (1); see also *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence in this case included the testimony of Officer Moats, who originally questioned Glover at the police roadblock. Officer Moats testified that he observed Glover driving the red Mustang to the roadblock; that Glover appeared to be drinking from a container; that Glover had a beer can between his legs; that Glover had red, glassy eyes, a strong odor of alcohol, and slurred speech; that Glover produced an expired driver's license that belonged to "Rodney Keith Glover"; and that Glover fled when directed to pull to the side of the road. Officer Moats also testified that he pursued

Glover in his patrol car with his lights and siren activated; that he observed Glover jump a curb, run a stop light, and attempt to collide with pursuing police vehicles; and that he witnessed the collision of Glover's car with the highway median. Officer Moats stated that he approached Glover, who was lying unconscious near the median, immediately following the collision; that he was certain that Glover was the driver of the Mustang whom he had questioned at the road-block a few minutes earlier; and that he went to DeKalb Medical Center because he wanted to obtain additional evidence from Glover for his DUI investigation.

In addition, both Sergeant Bayne and Officer Summers, the Clayton County police officers who had participated in the pursuit of Glover, testified that there was no confusion at the scene as to which of the injured men was the driver; the only confusion was related to the driver's actual name. Officer Summers further testified that he had a direct view of the Mustang during the collision and witnessed as Glover was ejected from the driver's side of the vehicle and thrown into the median wall. Sergeant Smith of the Georgia State Patrol also testified that there was no confusion at the scene as to which man was the driver of the vehicle.

This evidence was sufficient to support the jury's finding beyond a reasonable doubt that Glover was the driver of the vehicle.

*Judgment affirmed. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 26, 1998.

*Cynthia A. Price*, for appellant.
*J. Tom Morgan, District Attorney, Sheila A. Connors, Melissa L. Himes, Assistant District Attorneys*, for appellee.