**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 21, 2012

# In the Court of Appeals of Georgia

A12A0515. HOLSEY v. THE STATE.                    DO-020 C

DOYLE, Presiding Judge.

Rodney Calvindore Holsey was convicted of making a terroristic threat,[1] simple battery,[2] and family violence battery.[3] Holsey filed a motion for new trial, which the trial court denied. He appeals, challenging the sufficiency of the evidence as to the terroristic threat conviction. Holsey also argues that the trial court erred during sentencing and by failing to give curative instructions after improper remarks by the prosecutor during closing argument. For the reasons that follow, we affirm.

When an appellate court reviews the sufficiency of the evidence,

---

[1] OCGA § 16-11-37 (a).

[2] OCGA § 16-5-23 (a) (1).

[3] OCGA § 16-5-23 (a) (2) & (f).

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[4]

So viewed, the record shows that on February 14, 2009, Bridgett Holsey (Holsey's wife), Gretel Pittman (Bridgett's sister), and Kimberly Bell went to a bar in Albany. Holsey arrived some time later, approached the women, and grabbed Bridgett by her hair. Then, outside the club, Holsey hit Bridgett in the face, causing her to fall down. Pittman stood between Holsey and Bridgett in an effort to stop Holsey from hitting her again.

Pittman then called 911, and Corporal Rufus Reed responded to the scene. Pittman told Reed that as Holsey attacked Bridgett, he told Bridgett "that he would kill her and kill [Pittman] too while [Pittman] was on top of her sister trying to keep

---

[4] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 310 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

him from hitting [Bridgett] again." Bell told the officer that Holsey hit Bridgett in the face and that Holsey threatened to kill Bridgett and Pittman. Reed documented Pittman and Reed's verbal versions of the events in written statements. Later that night at the hospital, where Bridgett was receiving treatment for her injuries, Pittman and Bell reiterated their accusations that Holsey threatened to kill Bridgett and Pittman. Bridgett also told Corporal Reed that Holsey pulled her hair, punched her, and threatened to kill her.

Holsey was arrested and charged with simple battery, family violence battery, and two counts of making terroristic threats (one against Pittman and one against Bridgett). Pittman later contacted the police and signed paperwork stating that she no longer wished for Holsey to be prosecuted, explaining that Holsey and Bridget had reconciled. Bridgett consulted with an attorney and signed an affidavit admitting that Holsey pulled her hair and hit her, but denying that he threatened Pittman; Bridgett gave the affidavit to the police and asked them to drop the charges against Holsey. Bridgett, accompanied by Bell, subsequently told prosecutors that she and Holsey "worked out [their] problems" and that she did not want Holsey prosecuted, and she asked whether she would be required to testify against him.

3

At trial, Bridgett testified that at the club Holsey "tugged" her hair "to get [her] attention" and slapped her, causing her to fall down because she was "so drunk"; Bridgett denied telling police that Holsey threatened anyone. Bell testified that she saw Holsey hit Bridgett, but did not recall Holsey saying anything, explaining that, there "was a lot of people talking, so I don't know who said what. We was all drinking." Bell also stated that she did not recall telling police that she heard Holsey threaten to kill Bridgett and Pittman. Pittman testified that Holsey pulled Bridgett's hair and hit Bridgett, and he threatened to kill Pittman.

Corporal Reed testified about what the three woman told him about the incident, and the State introduced a copy of the 911 call, a photograph of the injuries to Bridgett's face, and copies of Bell's and Pittman's statements.

The jury found Holsey not guilty of making a terroristic threat against Bridgett (Count 1), but guilty of simple battery (Count 3), family violence battery (Count 4), and making a terroristic threat against Pittman (Count 2). During sentencing, the State introduced certified copies of Holsey's nine prior felony convictions, and the trial court sentenced him to five years in prison on Count 2, to be served consecutively with the twelve-month concurrent sentences on Counts 3 and 4. This appeal followed.

1. Holsey contends that the evidence was insufficient to support his conviction for making a terroristic threat against Pittman, arguing that the State's evidence on this charge consisted entirely of out-of-court statements made by Bell and Pittman.

This assertion is belied by the record, which indicates that Pittman admitted signing a statement that Holsey threatened to kill her, and she responded affirmatively when the State asked her on the witness stand whether "that's what happened." Pittman's testimony alone is sufficient to sustain the jury's verdict.[5] Even without this testimony, however, the witnesses' statements to Corporal Reed regarding Holsey's threat to kill Pittman are sufficient to support the verdict. "[E]ven though . . . witness[es] may recant on the stand, [their] prior inconsistent statements constitute substantive evidence on which the [jury] may rely."[6] "Under circumstances such as this – where there are multiple versions of events or . . . witness[es] change[] . . . [their] testimony – the jury is responsible for ascertaining which version is true."[7] "The fact that at trial the [witnesses] disavowed [their] prior statements went to the

---

[5] See *Brown v. State*, 314 Ga. App. 198, 200 (1) (723 SE2d 520) (2012) ("the competent testimony of even a single witness can be enough to sustain a conviction").

[6] (Punctuation omitted.) *Meeks v. State*, 281 Ga. App. 334, 336 (636 SE2d 77) (2006).

[7] *Wheeler v. State*, 281 Ga. App. 158, 160 (2) (635 SE2d 415) (2006).

5

weight and credibility that the jury wished to assign to the State's otherwise sufficient evidence and presents no basis for reversal."[8] Accordingly, the evidence authorized the jury to conclude that Holsey made a terroristic threat to Pittman.[9]

2. Holsey also argues that the trial court erred by failing to give curative instructions after he objected when, during closing argument, the prosecutor improperly: (1) argued that the jury should take the case seriously because a member of the jury panel – the person was not selected to be on the jury – had a daughter murdered by her boyfriend; and (2) referred to the "domestic violence cycle."[10] Holsey argues that the foregoing arguments were outside the bounds of the evidence and prejudicial.

OCGA § 17-8-75 provides:

---

[8] (Punctuation omitted.) *Griffin v. State*, 262 Ga. App. 87, 88 (1) (585 SE2d 145) (2003).

[9] See OCGA § 16-11-37 (a) ("A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence, . . . with the purpose of terrorizing another . . . or in reckless disregard of the risk of causing such terror."); *Enuka v. State*, 314 Ga. App. 466, 468 (1) (724 SE2d 471) (2012) (threat to kill victim meets the definition of a terroristic threat).

[10] The State agreed to "move on" after the first statement regarding the juror, before the trial court ruled on Holsey's objection. The trial court sustained Holsey's objection to the comment regarding the domestic violence cycle.

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court *shall* also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.[11]

Pursuant to this code section, a trial court has an "independent duty, after defense counsel's objection, to rebuke the prosecutor, give an appropriate curative instruction, or grant a mistrial in the event that the prosecutor has injected into the case prejudicial statements on matters outside of the evidence."[12]

Here, the prosecutor's comment regarding the member of the jury pool was arguably an improper violation of the prohibition against future dangerousness arguments.[13] And there was no testimony admitted regarding the domestic violence

---

[11] (Emphasis supplied.)

[12] *O'Neal v. State*, 288 Ga. 219, 221 (1) (702 SE2d 288) (2010).

[13] See *Kemp v. State*, ___ Ga. App. ___ (3) (Case No. A11A1777; decided Mar. 12, 2012) ("It is highly improper for a prosecutor to argue during the guilt-innocence phase of a criminal trial that if found not guilty, a defendant poses a threat of future dangerousness.") (punctuation omitted). But see *Collins v. State*, 283 Ga. App. 188, 194 (2) (c) (641 SE2d 208) (2007).

cycle. Error resulting from a violation of OCGA § 17-8-75, however, "is subject to harmless error analysis."[14]

The trial court specifically instructed the jury in this case that the closing arguments of counsel were not evidence. All three witnesses told the officer and testified at trial that Holsey pulled Bridgett's hair and punched her. And although Bridgett and Bell recanted their testimony about the verbal threats after the couple reconciled shortly after the incident, Bell and Pittman specifically told the responding officer that Holsey threatened to kill Pittman, and Pittman conceded at trial that her statement to Corporal Reed was accurate. Moreover, the jury weighed the evidence and acquitted Holsey of Count 1 (making a terroristic threat to Bridgett). Given this evidence, along with the trial court's instruction to the jury and the fact that the prosecutor's statements were brief and immediately objected to, "we conclude that it is highly probable that the trial court's error in failing to . . . perform its duty under OCGA § 17-8-75 did not contribute to the verdict."[15]

---

[14] (Punctuation omitted.) *O'Neal*, 288 Ga. at 223 (2).

[15] *Walker v. State*, 281 Ga. 521, 524 (5) (640 SE2d 274) (2007). See also *Dolphy v. State*, 288 Ga. 705, 708 (2) (b) (707 SE2d 56) (2011); *O'Neal*, 288 Ga. at 223 (2); *Fincher v. State*, 276 Ga. 480, 482 (4) (578 SE2d 102) (2003).

3. In his final enumeration, Holsey contends that his five-year sentence for making a terroristic threat was excessive and violates the Eighth Amendment of the United States Constitution and the Georgia Constitution. We disagree.

"OCGA § 17-10-1 authorizes the trial court to sentence a defendant to any amount of time within the limits provided by law."[16] The maximum sentence for making a terroristic threat is five years,[17] and the maximum sentence for the battery misdemeanor battery charges is twelve months each.[18] "There is no constitutionally cognizable right to concurrent, rather than consecutive, sentences. Under Georgia law, whether to impose consecutive or concurrent sentences for multiple offenses is within the trial court's discretion, so long as the sentence for each offense is within the statutory limits."[19] Accordingly, because Holsey's sentence is within the statutory ranges, this enumeration is without merit.[20]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[16] *Baldwin v. State*, 217 Ga. App. 866, 869 (3) (460 SE2d 80) (1995).

[17] See OCGA § 16-11-37 (c).

[18] See OCGA § 17-10-3 (a) (1).

[19] (Punctuation omitted.) *Simpson v. State*, 310 Ga. App. 63, 64, n. 4 (715 SE2d 675) (2011).

[20] See *Baldwin*, 217 Ga. App. at 868 (3).