**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 27, 2018**

# In the Court of Appeals of Georgia

A18A1132. CHRISTIAN v. THE STATE.

BETHEL, Judge.

Following his convictions for two counts of terroristic threats, one count of disorderly conduct, obstruction of a law enforcement officer, possession of marijuana, and DUI (drugs), Godfrey Andre Christian appeals from the denial of his motion for a new trial. On appeal, Christian argues that there was insufficient evidence to sustain his DUI (drugs) conviction, that his sentence constitutes cruel and unusual punishment, and that the prosecution failed to prove chain of custody. However, we find the evidence to be sufficient to sustain Christian's DUI (drugs) conviction, that his sentence does not "shock the conscience" so as to render it unconstitutional cruel and unusual punishment, and that there was no reversible error with respect to his

chain of custody objection. Therefore, we affirm the trial court's denial of Christian's motion for a new trial.[1]

"On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence." *State v. Robinson*, 275 Ga. App. 117, 117 (619 SE2d 806) (2005) (citation omitted). So viewed, the record shows that Christian and his girlfriend had been renting a room in a married couple's apartment. On October 4, 2012, the wife came home and discovered Christian smoking marijuana outside the home despite the

---

[1] Having been called to assume new duties, it appears this will be among the last of my opinions to clutter the pages of this storied reporter. Accordingly, I beg the indulgence of my interjecting a word of thanks to those who have made my service on this Court rewarding, challenging, and delightful. I begin with my chambers team. Anything approaching useful scholarly legal work you have read here after my name is largely attributable to the efforts of Kate Celender, Jennifer McNeely, and Brad Vaughan. Our team has been orchestrated and supported excellently by Jessica Watkins. These people have constituted a work family that exceeded my high expectations. Additionally, I thank the staff of the Court. Our shared state is most fortunate to have these dedicated men and women serving us in this Court and ensuring care and professional attention is afforded every matter that finds its way here. Lastly, I thank my fellow Judges. It has been an honor and privilege to serve among you, learn from you, and enjoy fellowship and friendship with you. All of these I have mentioned embody the Georgia spirit described by our first motto, non sibi sed aliis (not for themselves but for others). I pray my errors have been in dissent or were reversed.

wife having previously asked Christian to refrain from doing so. The wife notified Christian's girlfriend that they had thirty days to find somewhere else to live. Christian's girlfriend then stepped outside and notified Christian. Christian became furious, stepped into the house, cursed at the wife, gave her the keys, and packed his stuff to leave. After Christian and his girlfriend had left, the married couple left the house with their children.

While the family was out, the wife began receiving text messages from Christian stating that he planned to return to the home and threatening "war" if his rent money was not returned. The couple returned home and met Christian outside. As Christian emerged from his vehicle outside the home, he threatened to stab the husband and began moving toward him. However, the husband displayed a firearm, stopping Christian's approach. Christian then said that when the husband was at work, Christian and some friends would return to the home, rape the wife, murder the children, and shoot up the house. The wife called police as Christian left the home.

Christian returned to the home a second time, parked behind the home, and smoked marijuana. Christian then pulled his vehicle around to the front of the home and asked the husband, who was outside, to fight. The husband declined, and Christian again drove away from the home. After police arrived and began talking to

3

the couple, Christian returned to the home a third time. Police asked Christian to stop and talk, but Christian continued driving. Several police cars attempted to pull Christian over and after several failed attempts, finally succeeded.

Upon Christian's arrest, police noticed a strong odor of marijuana coming from the car and Christian's glazed and dilated eyes. Police also discovered marijuana in the vehicle. Police obtained a search warrant for Christian's blood, which tested positive for marijuana. A jury ultimately convicted Christian of two counts of terroristic threats, disorderly conduct, obstruction of a law enforcement officer, and DUI (drugs). Christian filed a motion for a new trial, which was denied following a hearing, and this appeal followed.

1. Christian argues the evidence was insufficient to support his conviction for DUI (drugs)[2] because the State did not offer any evidence that the testing was done in compliance with the provisions of OCGA § 40-6-392.

In an appeal challenging the sufficiency of the evidence, "it is the function of this court to examine the evidence in the light most favorable to the verdict and to determine whether any rational trier of fact could have found the appellant guilty

_____

[2] Christian does not challenge the sufficiency of the evidence on his other convictions.

4

beyond a reasonable doubt." *Booker v. State*, 257 Ga. 37, 38 (1) (354 SE2d 425) (1987) (citation omitted). "As long as there is some competent evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict." *Lucas v. State*, 295 Ga. App. 831, 832 (1) (673 SE2d 309) (2009) (footnote omitted).

Christian was convicted of DUI (drugs) under OCGA § 40-6-391 (a) (2). OCGA § 40-6-391 (a) (2) provides as follows: "A person shall not drive or be in actual physical control of any moving vehicle while: . . . [u]nder the influence of any drug to the extent that it is less safe for the person to drive." At trial, the evidence showed that Christian tested positive for marijuana shortly after he was forcibly removed from his vehicle, which smelled strongly of marijuana, and was observed with glazed and dilated eyes. Christian's girlfriend, who was also in the vehicle at the time of his arrest, informed officers that Christian had smoked five "blunts" that day. Finally, the evidence showed that Christian led police on a low-speed chase through the apartment complex, culminating in him being forcibly removed from the vehicle and tased before his arrest. This evidence was sufficient to authorize a rational trier of fact to find that Christian was impaired due to the marijuana in his system such that

5

he was less safe to drive. *See Rivera v. State*, 309 Ga. App. 544, 545 (1) (710 SE2d 694) (2011); *Sistrunk v. State*, 287 Ga. App. 39, 39-40 (651 SE2d 350) (2007).

In light of this evidence in the record, it was not necessary for the State to demonstrate compliance with the requirements of OCGA § 40-6-392 in order to sustain the conviction for DUI less safe under OCGA § 40-6-391 (a) (2). This enumeration is without merit.

2. Christian next argues that his sentence for terroristic threats constitutes cruel and unusual punishment in violation of the United States and Georgia Constitutions because the statute, OCGA § 16-11-37 (a), was later changed to make violation a misdemeanor. We do not find that his sentence constitutes cruel and unusual punishment.

> Both the Georgia and the federal constitutions categorically prohibit inflicting cruel and unusual punishments. A punishment is cruel and unusual if it (1) makes no measurable contribution to accepted goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. Whether a punishment is cruel and unusual is not a static concept, but instead changes in recognition of evolving standards of decency that mark the progress of a maturing society. Legislative enactments constitute the clearest and most objective evidence of how contemporary society views a particular punishment.

6

As a result, the issue of punishment is generally one for the legislative branch, and legislative discretion is deferred to unless the sentence imposed shocks the conscience.

*Johnson v. State*, 276 Ga. 57, 62 (5) (573 SE2d 362) (2002) (citation and punctuation omitted).

In 2016, the General Assembly revised OCGA § 16-11-37 to provide for misdemeanor punishment of terroristic threats except under certain circumstances, including where the threat "suggested the death of the threatened individual." Ga. L. 2016, p. 812, § 2. These changes went into effect May 3, 2016. *See id.* Prior to the revision, and at the time Christian committed and was tried on the offenses, the relevant portion of the statute allowed for "imprisonment for not less than one nor more than five years[.]" *See* prior OCGA § 16-11-37 (c) (effective July 1, 2012 to June 30, 2015). Christian received a sentence of 5 years on each of the two counts, to be served consecutively. Christian was thus given a sentence within the limits provided by law. *See* OCGA § 17-10-1 (a) (1) (A) (authorizing a trial court to sentence a defendant to any amount of time within the limits provided by law). *See also Holsey v. State*, 316 Ga. App. 801, 805-806 (3) (729 SE2d 465) (2012) (recognizing the judge's discretion to impose consecutive sentences). Further, even

under the amended statute, Christian's threats would have fallen within the same sentencing range because Christian threatened to stab the husband, gang-rape the wife, and shoot up the couple's house. *See* OCGA 16-11-37 (d) (1) (providing that "if the threat suggested the death of the threatened individual, the person convicted shall be guilty of a felony and shall be punished by . . . imprisonment for not less than one nor more than five years"). Thus, while society's standards as expressed in our code may have theoretically "evolved" to view other terroristic threats less severely in terms of punishment (as arguably evidenced by the provision of misdemeanor offenses), the General Assembly has not elected to reduce the punishment for threats suggesting death.

Here, we cannot say that the five year sentence imposed for each threat suggesting the death of the husband and wife "shocks the conscience" so as to render the sentence unconstitutional. *See, e.g.*, *Holsey*, 316 Ga. App. at 805 (3) (five year concurrent sentence for terroristic threat not cruel and unusual). This enumeration therefore fails.

3. Finally, Christian argues that the State failed to prove chain of custody with respect to his blood sample (which showed that Christian had consumed marijuana)

because there was no testimony regarding how the sample was placed into the lockbox and transported to the crime lab. There is no reversible error.

During the trial, Christian failed to object to testimony of the forensic toxicologist who testified regarding the blood test. In his amended motion for a new trial, Christian asserted for the first time the State's alleged failure to present chain of custody evidence regarding his blood sample. Under our previous Evidence Code, this matter would have been waived for appellate review. *See Glover v. State*, 230 Ga. App. 795, 797 (1) (498 SE2d 300) (1998). However, the new Evidence Code allows this Court to review rulings admitting or excluding evidence for plain error. *See* OCGA § 24-1-103 (d); *Gates v. State*, 298 Ga. 324, 328 (3) (781 SE2d 772) (2016). Accordingly, we review this claim for plain error.

In determining whether plain error exists, we consider the following four-prongs:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived by the appellant. Second, the legal error must be clear and obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above

9

three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Reversal is authorized only if all four prongs are satisfied — a difficult standard indeed.

*Carter v. State*, 302 Ga. 200, 206 (3) (805 SE2d 839) (2017) (cleaned up).

Even if we were to presume that Christian satisfied the first and second prongs of the above test, there is no plain error here because he has failed to meet his burden under the third prong. That is, Christian has failed to demonstrate that the alleged "error" in admitting the blood sample affected the outcome of the trial. Here, there was testimonial evidence from two other witnesses that Christian had smoked marijuana shortly before driving. Further, police noticed a strong odor of marijuana coming from Christian's car, in addition to his glazed and dilated eyes. Finally, police also discovered marijuana in Christian's vehicle. Thus, the evidence regarding the blood sample was cumulative, "and its admission did not in reasonable probability affect the outcome of the trial." *Lafavor v. State*, 334 Ga. App. 125, 128 (2) (778 SE2d 377) (2015) (footnote omitted).

*Judgment affirmed. Ellington, P. J., and Gobeil, J., concur.*